## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-KA-00721-SCT

*ORLANDO GIBSON, a/k/a ORLANDO DEON*
*GIBSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/09/97 |
| TRIAL JUDGE: | HON. WARREN ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARIE WILSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/25/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/16/98 |

**BEFORE PITTMAN, P.J., ROBERTS AND SMITH, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Orlando Gibson was indicted in the Circuit Court of Washington County, Mississippi on August 3, 1996, on one count of aggravated assault, pursuant to Miss. Code Ann. § 97-3-7(2) and one count of aggravated assault on a law enforcement officer, pursuant to Miss. Code Ann. § 97-3-7(2). On September 6, 1996, Gibson was arraigned and entered a plea of not guilty to all charges. Gibson's trial was continued by the Court on his motion on October 30, 1996. Gibson failed to appear for trial on or about February 2, 1997, and a bench warrant was issued. On February 4, 1997, an initial forfeiture was taken on Gibson's bond and a scire facies was issued on the bonding company by the court. On May 5, 1997, trial was held and the jury returned a verdict of guilty on both charges. On May 9, 1997, Gibson was sentenced to serve a term of twenty (20) years in the Mississippi Department of Corrections for aggravated assault and a term of thirty (30) years in the Mississippi Department of Corrections for aggravated assault on a police officer, with terms to run consecutively.

¶2. Gibson filed a Motion for New Trial or in the Alternative for JNOV on May 12, 1997. The trial court entered an order overruling the Motion on May 12, 1997. Gibson filed a Notice of Appeal asserting the following issues:

**I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED GIBSON'S MOTION FOR A DIRECTED VERDICT AND WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?**

**II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT SUBMITTED JURY INSTRUCTION S-6 TO THE JURY?**

**III. A. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT STATED THAT GIBSON WAS NOT ENTITLED TO A SIMPLE ASSAULT INSTRUCTION?**

**B. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED JURY INSTRUCTION D-8?**

**IV. WHETHER THE STATE VIOLATED *BATSON* BY USING ALL OF ITS PEREMPTORY CHALLENGES AGAINST BLACK POTENTIAL JURORS?**

**V. WHETHER THE SENTENCE RENDERED BY THE TRIAL COURT WAS SO GROSSLY DISPROPORTIONATE AND EXCESSIVE AS TO WARRANT REVERSAL?**

**VI. WHETHER GIBSON WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE ERRORS EFFECT MADE AT TRIAL?**

## STATEMENT OF THE FACTS

¶3. On June 1, 1996, a carnival was held at the Washington County Convention Center. Deputy Joel Sandifer of the Washington County Sheriff's Department was working in full uniform at the carnival for security. At Gibson's trial Sandifer testified that sometime between 12:00 and 1:00 a.m., as he and Deputy Dempsey Hollis were working security in the midway area, a large crowd began screaming and running towards the deputies. Upon going to the area to see what was happening, Sandifer and Hollis noticed that a large fight had broken out. Sandifer stated that as they were trying to separate the people, a man took a swing at him and then ran off. Sandifer chased the man outside of the midway area. According to Sandifer, when he and the subject rounded one of the rides and entered the parking lot area, the man shot his pistol back toward the midway area, in the direction of the crowd. Sandifer identified Gibson as the subject he chased and saw fire the pistol.

¶4. Sandifer further testified that he and Hollis chased Gibson toward a vehicle that was parked in the parking lot. He stated that as they ran, Gibson was shooting in the two deputies direction. When they came upon the car, Gibson jumped into the passenger side. Sandifer stated that he noticed that Gibson still had the pistol in his hand. Sandifer noticed that there was a person in the driver's seat and thus, ordered him to get out of the car and to get down on the ground. As the driver complied, Gibson jumped out of the back window and landed on the ground. Gibson further testified that as Gibson was getting up off the ground

with the weapon pointed in the officer's direction, Hollis fired on him.

¶5. Deputy Hollis testified that he also was dressed in full uniform on the night of the incident. He stated that when he and Sandifer attempted to break up the fight, the officers somehow got separated from each other. He explained that Sandifer was probably thirty to forty feet away from him. Hollis testified that he heard gunshots being fired and observed the crowd immediately fan out. He then saw Sandifer running toward the field between two of the rides and Hollis began to run in towards that direction. Hollis noted that as he was rounding a ride, he saw Gibson firing a pistol toward himself and Sandifer. He screamed out "Stop, police," but Gibson continued to run. Hollis stated that when Gibson fired the last shot that Hollis heard, he cleared the rides and came to an open area and fired at Gibson, but missed. Hollis also testified that Gibson ran to the brown Buick, dove into the vehicle through the window, crawled across the front seat of the car, and finally dove out of the driver's side window. He stated that when Gibson landed on the ground, he was in a crouched position and still had the gun in his hand. As Gibson pushed himself off of the ground, he pointed the gun directly at Hollis, who was coming around the side of the car. Hollis testified that it was at this time that he pointed his gun at Gibson and fired. Gibson immediately fell to the ground. Hollis further noted while handcuffing Gibson, he saw the weapon just on Gibson's side at the rear tire, probably an arm's reach from him.

¶6. Sergeant Milton Gaston of the Washington County Sheriff's Department testified that on the night of the incident, he recovered a .32 revolver at the convention center next to a brown Buick. Gaston turned this weapon over to Investigator Kelvin McKenzie. Bullet holes were found in a trailer behind the ferris wheel.

¶7. The next witness was for the defense. Joseph Gibson, the defendant's brother, maintained that his brother never pointed a gun at the crowd or at the deputies. He also stated that his brother put the gun down before he climbed into the passenger side. However, the gun was found on the driver's side, which is where Gibson exited the car.

¶8. Terrance Butts also testified that Gibson shot only into the air three or four times, never at the crowd.

¶9. Gibson testified last for the defense. He stated that he fired the gun up in the air about four or five times in an attempt to break up the fight. According to him, when he was shot by the deputies, he did not have the gun in his hand. He did not shoot toward the deputies at any time.

## DISCUSSION OF THE ISSUES

### I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED GIBSON'S MOTION FOR A DIRECTED VERDICT AND WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

#### A. Weight of the Evidence

¶10. Gibson argues in his first assignment of error that the verdict of the jury was against the overwhelming weight of the evidence. Here he says that there was no credible evidence which would tend to show that he had shot at the crowd at the fair or the deputies and that the jury's verdict was for that reason against the overwhelming weight of the evidence.

¶11. This Court will reverse the jury's findings " 'only where the evidence is such that reasonable and fair-minded jurors could only find the defendants not guilty.' " ***Jackson v. State***, 689 So. 2d 760, 766 (Miss.1997)(*quoting **Heidel v. State***, 587 So. 2d 835, 838 (Miss.1991)). In determining ". . . whether or not a jury verdict is against the overwhelming weight of the evidence, 'this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial.'" ***Coleman v. State***, 697 So. 2d 777, 788 (Miss.1997) (*quoting **Nicolaou v. State***, 612 So. 2d 1080, 1083 (Miss. 1992)); ***Herring v. State***, 691 So. 2d 948, 957 (Miss.1997); ***Jackson***, 689 So. 2d at 766. "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." ***Pleasant v. State***, 701 So. 2d 799, 802 (Miss.1997); ***Herring***, 691 So. 2d at 957; ***Benson v. State***, 551 So. 2d 188, 193 (Miss.1989)(*citing **McFee v. State***, 511 So. 2d 130, 133-34 (Miss.1987)).

## B. Sufficiency of the Evidence

¶12. Gibson also contends that the trial court erred in ruling that the evidence was legally sufficient to support a conviction of aggravated assault and aggravated assault on a law enforcement officer and that he is entitled, as a matter of law, to a reversal. He argues that the evidence is legally insufficient to support a conviction of aggravated assault. "When reviewing the sufficiency of the evidence, this Court looks at the lower court's ruling `on the last occasion when the sufficiency of the evidence was challenged.'" ***Ballenger v. State***, 667 So. 2d 1242, 1252 (Miss. 1995), *quoting **Green v. State***, 631 So. 2d 167, 174 (Miss 1994)). The last occasion upon which Gibson challenged the sufficiency of the evidence was in his Motion for JNOV. Therefore, this Court is to consider all of the evidence presented throughout the course of the trial. "All evidence and inferences derived therefrom, tending to support the verdict, must be accepted as true, while all evidence favoring the defendant must be disregarded." ***Ballenger***, 667 So. 2d at 1252. *See **Hart v. State***, 637 So. 2d 1329, 1340 (Miss. 1994); ***Clemons v. State***, 460 So. 2d 835, 839 (Miss. 1984). "Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury." ***Wetz v. State***, 503 So. 2d 803, 808 (Miss. 1987). Therefore, this Court will not disturb a jury's finding unless it is found that no reasonable and fair-minded hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. ***Ballenger***, 667 So. 2d at 1252-53.

## C. Analysis

¶13. The jury found Gibson guilty of aggravated assault and aggravated assault on a law enforcement officer pursuant to Miss. Code Ann. § 97-3-7(2):

> (2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; and, upon conviction, he shall be punished by imprisonment . . . in the penitentiary for not more than twenty (20) years. Provided, however, a person convicted of aggravated assault (a) upon a . . . law enforcement officer . . .while such . . . law enforcement officer . . . is acting within the scope of his duty, office or employment . . . shall be punished . . . by imprisonment for not more than thirty (30) years.

Miss. Code Ann. § 97-3-7(2) (1994).

¶14. Accepting as true the evidence that supports the jury's verdict, there is no merit to Gibson's assignment of error. Deputies Sandifer and Hollis both testified that Gibson fired a weapon in the direction of the midway which was crowded with people. Additionally, both deputies testified that as they chased Gibson toward the parking lot, he shot in their direction. Hollis testified unequivocally that he saw Gibson fire at him. This testimony amply supports the jury's finding and the court's refusal to order a new trial. *Davis v. State*, 476 So. 2d 608, 610 (Miss. 1985). *See also* **Moore v. State**, 617 So. 2d 272, 274 (Miss. 1993). The testimony to the contrary simply created issues of fact to be determined by the jury. The jury obviously determined the facts were against Gibson. Therefore, this Court believes that the jury verdict was not against the overwhelming weight of the evidence.

¶15. Furthermore, based on the facts above, we conclude that the evidence was legally sufficient to support a finding of guilty as to the charge of aggravated assault and aggravated assault upon a law enforcement officer. Once a jury has returned a verdict of guilty in a criminal case, the Supreme Court is not at liberty to direct that the defendant be discharged short of a conclusion that based on the evidence, taken in a light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. **Fleming v. State**, 604 So. 2d 280, 287 (Miss. 1992). As such, Gibson's first assignment of error is without merit.

### II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT SUBMITTED JURY INSTRUCTION S-6 TO THE JURY?

¶16. Gibson next challenges the trial court's granting of Instruction S-6, set out as follows:

> The Court instructs the Jury that no person has the right to resist or obstruct his lawful arrest, by a law enforcement officers by force, or violence, or threats, or by any other manner.

Gibson asserts on appeal that this instruction was essentially a comment by the trial judge on evidentiary matters. However, defense counsel's objection at trial was, "I don't think there's anything in the case that suggests that he resisted arrest by violence or threats or any other manner. I don't think that's been shown in this case." The court disagreed, stating, "Well I think the testimony of the Deputy was that he instructed the man to stop and the man pulled--pointed a gun at him. I would say that's rather violence [sic] if the jury believes the officer's testimony. That one is given." Thus, the only challenge to instruction S-6 was a lack of evidentiary support. On appeal, Gibson is limited to the position taken at trial. **Roundtree v. State**, 568 So. 2d 1173, 1177 (Miss. 1990). The issue of whether this instruction constituted an impermissible comment on the weight of the evidence was not presented to the trial court and thus, is not properly before this Court. **Thornhill v. State**, 561 So. 2d 1025, 1029 (Miss. 1989). Therefore, Gibson's second assignment of error is without merit.

¶17. Notwithstanding the procedural bar, this Court will address this issue on the merits. Jury instructions are to be granted only where evidence has been presented which supports the instruction. **Tharp v. Bunge Corp.**, 641 So. 2d 20, 26 (Miss. 1994). "'A party to an action is entitled to have the jury instructed regarding a genuine issue of material fact so long as there is credible evidence in the record which would support the instruction.'" **Sumrall v. Mississippi Power Co.**, 693 So. 2d 359, 363 (Miss. 1997) (*quoting* **Copeland v. City of Jackson**, 548 So. 2d 970, 973 (Miss. 1989) (*quoting* **Hill v. Dunaway**, 487 So. 2d 807, 809 (Miss. 1986))). The Court finds that there was a sufficient evidentiary basis in the record to support an instruction regarding resisting arrest. As stated above, Deputy Hollis testified that he instructed

Gibson to stop and notified Gibson that he was the police. Gibson pointed a gun in the deputy's direction, fired and continued to run away. This is credible evidence of resisting arrest by means of violence-firing of a gun at the deputy. Therefore, regardless of the fact that this issue is procedurally barred, the trial court was correct in its decision to allow instruction S-6. This issue is found to be without merit.

### III. A. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT STATED THAT GIBSON WAS NOT ENTITLED TO A SIMPLE ASSAULT INSTRUCTION?

### B. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED JURY INSTRUCTION D-8?

### A. Simple Assault Instruction

¶18. Gibson also assigns as error the refusal of the trial court to grant him a requested instruction authorizing a conviction of simple assault under Miss. Code Ann. § 97-3-7(1). The use of a .32 revolver, a deadly weapon, precluded Gibson's entitlement to any simple assault instruction. *Hunt v. State*, 569 So. 2d 1200, 1203 (Miss. 1990). In *Hutchinson v. State*, 594 So. 2d 17 (Miss.1992), this Court held that when an accused wields a weapon that is without question deadly and then intentionally strikes his victim, he is not entitled to a lesser included offense instruction for simple assault, even if the injury is relatively slight. The weapon in this case was a .32 revolver. No jury could fail to find a revolver to be a deadly weapon. Based on *Hutchinson*, the trial court committed no error when it refused the Jury Instruction.

### B. Instruction D-8

¶19. Gibson next contends that the trial court erred in refusing instruction D-8, which would have given the jury the option of finding him guilty of the lesser offense of disturbing the peace rather than aggravated assault. This instruction was denied by the trial court on the basis that disturbing the peace was not a lesser included offense of aggravated assault.

¶20. In numerous cases we have set forth the guidelines as to when a lesser included offense instruction is proper, indeed mandatory: *Harper v. State*, 478 So. 2d 1017 (Miss.1985); *Lee v. State*, 469 So. 2d 1225 (Miss.1985); *Fairchild v. State*, 459 So. 2d 793, 801 (Miss.1984).

> [A] lesser included offense instruction should be granted unless the trial judge--and ultimately this Court--can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).

*Harper v. State*, 478 So. 2d at 1021. See also *Stevens v. State*, 458 So. 2d 726 (Miss.1984); *Lacy v. State*, 432 So. 2d 1205 (Miss.1983); *Colburn v. State*, 431 So. 2d 1111 (Miss.1983); *In re Jordan*, 390 So. 2d 584 (Miss.1980). This case focuses upon another delineation of when the lesser included offense instruction should not be given.

¶21. Before Gibson would be entitled to a lesser included offense instruction, there would have to be some proof which showed him innocent of aggravated assault, but at the same time guilty only of disturbing the peace. *Harper*, 478 So. 2d at 1021. The evidence in this case does not support any such contention,

because the very proof which made out a case of aggravated assault, purposely or knowingly shooting a gun near a very large crowd of people, likewise made out a case of disturbing the peace. Indeed, the requested instruction D-8 set forth:

> Disturbing the peace is committed by a person who disturbs the public peace, or the peace of other by **violent or boisterous conduct** or when **one seeks to intimidate another person by conduct** calculated to breach the peace. (Emphasis added).

This requested instruction is no more than the contention that where an accused is guilty of two crimes, the State can only prosecute and punish him for the one with the lesser penalty. We have repeatedly rejected this contention. *Cumbest v. State*, 456 So. 2d 209, 222-23 (Miss.1984).

¶22. We cannot improve upon the language of the New York Court of Appeals when it addressed this point:

> The principle has, accordingly, evolved that the submission of a lesser degree of an included crime is justified only where there is some basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower one.... The trial court may not, however, permit the jury to choose between the crime charged and some lesser offense where the evidence to support a verdict of guilt of the latter necessarily proves guilt of the greater crime as well.

*People v. Mussenden*, 308 N.Y. 558, 127 N.E.2d 551, 554 (1955). Finding no reversible error was committed in the trial of this case, this Court finds this issue without merit.

### IV. WHETHER THE STATE VIOLATED *BATSON* BY USING ALL OF ITS PEREMPTORY CHALLENGES AGAINST BLACK POTENTIAL JURORS?

¶23. Gibson alleges that the trial court committed error in overruling his *Batson* challenges with respect to five potential jurors. On appellate review, the trial court's determinations under *Batson v. Kentucky*, 476 U.S. 79 (1986), are accorded great deference because they are based in a large part, on credibility. *Coleman v. State*, 697 So. 2d 777, 785 (Miss. 1997). "'Great deference' has been defined in the Batson context as insulating from appellate reversal any trial findings which are not clearly erroneous." *Lockett v. State*, 517 So. 2d 1346, 1349-50 (Miss. 1987).

¶24. Under *Batson*, the party objecting to the peremptory challenge must first make a prima facie showing that race was the criteria for the exercise of the peremptory strike. *Batson v. Kentucky*, 476 U.S. 79, 96-97 (1986); *Stewart v. State*, 662 So. 2d 552, 557 (Miss. 1995). To do this, the defendant must show: 1) that he is a member of a "cognizable racial group;" 2) that the prosecutor has exercised peremptory challenges toward the elimination of veniremen of his race; and 3) that facts and circumstances raised an inference that the prosecutor used his peremptory challenges for the purpose of striking minorities. *Conerly v. State*, 544 So. 2d 1370, 1372 (Miss.1989)(*citing Batson*, 476 U.S. at 96-97). Should the defendant make such a showing, the burden then shifts to the party exercising the challenge to offer a race-neutral explanation for striking the potential juror. *Batson*, 476 U.S. at 97-98; *Stewart*, 662 So. 2d at 558. If a racially neutral explanation is offered, the defendant may rebut the explanation. *Bush v. State*, 585 So. 2d 1262, 1268 (Miss.1991). Finally, the trial court must determine whether the objecting party has met its burden to prove that there has been purposeful discrimination in the exercise of the peremptory. *Batson*, 476 U.S. at 98; *Stewart*, 662 So. 2d at 558.

¶25. In the case *sub judice*, after the state exercised its peremptory challenges and tendered the panel, defense counsel stated, "Your Honor, we'd make the Batson challenges on all of the jurors who have been struck by the State. They're all black." Finding that the defense had made a prima facie showing that race was the criteria for the exercise of the peremptory challenge, the trial court looked to the State who offered its racially neutral reasons for the strikes--pink eye, single, unemployed, physical address and housewife-- which the trial court accepted. The challenge as to one of the strikes, that the potential juror had pink eye and was wearing sunglasses, was withdrawn by the defense. Thus, that challenge is not at issue on appeal. As to the next two jurors, juror 2 was thirty-five years old, had three children and no husband. Juror 6 was twenty-eight, had two children and was unemployed. All of these reasons have been held to be racially neutral. *Lockett v. State*, 517 So. 2d 1346, 1356-57 (Miss. 1987). In *Lockett v. State*, 517 So. 2d 1346 (Miss. 1987), this Court presented a list of reasons accepted as race neutral by other courts throughout the country in an effort to provide guidance to trial judges in this state, including age, demeanor, marital status, single with children, prosecutor distrusted juror, educational background, employment history, criminal record, young and single, friend charged with crime, unemployed with no roots in the community, posture and demeanor indicated juror was hostile to being in court, juror was late, and short term employment. *Lockett*, 517 So. 2d at 1356-57; *Davis v. State*, 660 So. 2d 1228, 1242 (Miss. 1995). In light of *Lockett*, the explanations given by the State on jurors 2 and 6 are race-neutral.

¶26. The two remaining strikes were based on the area of residence of the potential jurors. Specifically, the prosecutor struck Valerie Redmon because she lived on North Broadway Street and Randy Lamar McGhee because he lived on Theobald Street. This reason is racially neutral on its face. When the defense challenged these two strikes, the assistant district attorney clarified his position as follows:

> It's a very bad neighborhood and I'm sure shootings occur there all the time and, therefore, shootings may not bother them as much as it would someone else, they may be used to it. The same as for a person who lives on Theobald.

> Your Honor, if there had been white folks living on Theobald, I would do the exact same thing.

The court then made this finding:

> Well, the Court notes that there are a lot of shootings in that area, both of those areas, both of those streets there are also a lot of white parts of that area where there's also been a lot of shooting, so that is a race neutral reason. I will overrule the objection.

¶27. In responding to the reasons given by the State, the defense argued "that the reasons given for exclusion were only superficial race neutral reasons that were simply a facade to mask the racially discriminatory purposes behind the strikes." *Harper v. State*, 635 So. 2d 864, 868 (Miss. 1994). In *Harper*, this Court effectively discredited such an argument with the following:

> Determining whether there lies a racially discriminatory motive under the State's articulated reasons is left to the sole discretion of the trial judge . . . . Moreover, a lower court's factual findings are given due deference and will not be overturned unless there appears an error that is against the overwhelming weight of the evidence.

*Harper*, 635 So. 2d at 868. (citations omitted). Accord, *Chase v. State*, 645 So. 2d 829, 843 (Miss. 1994); *Perry v. State*, 637 So. 2d 871 (Miss. 1994); *Porter v. State*, 616 So. 2d 899, 907 (Miss.

1993). Furthermore, the United States Supreme Court explained in *Purkett v. Elem*, 514 U.S. 765 (1995):

> The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

*Purkett*, 514 U.S. at 767-68 (citations omitted). The Supreme Court went on to emphasize that the justification tendered at the second step must rise only to the level of being facially nondiscriminatory. It need not be even "minimally persuasive" and may indeed be even "silly or superstitious." *Purkett*, 514 So. 2d at 768. At that point, the court must determine whether the strike has a showing of purposeful discrimination. There is no evidence of purposeful discrimination in the case *sub judice*. This Court will not reverse a trial judge's factual findings relative to a prosecutor's use of peremptory challenges on minority persons unless they appear clearly erroneous or against the overwhelming weight of the evidence. *Stewart*, 662 So. 2d at 558. Looking at the record, we cannot say that the trial court clearly erred in overruling the Batson challenge. Accordingly, this assignment of error is without merit.

### V. WHETHER THE SENTENCE RENDERED BY THE TRIAL COURT WAS SO GROSSLY DISPROPORTIONATE AND EXCESSIVE AS TO WARRANT REVERSAL?

¶28. Gibson argues that his sentence of a total of fifty (50) years is grossly disproportionate to the crimes for which he was convicted. "Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." *Hoops v. State*, 681 So. 2d 521, 537 (Miss. 1996). "'Further, the general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute.'" *Hoops*, 681 So. 2d at 538 (*quoting Fleming v. State*, 604 So. 2d 280, 302 (Miss. 1992). However, this Court will use the three-pronged analysis as set forth by the United States Supreme Court in *Solem v. Helm*, but only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of "gross disproportionality." *Hoops*, 681 So. 2d at 538. The three factors set out in *Solem* for courts to consider when conducting a proportionality analysis are:

(a) gravity of the offense and the harshness of the penalty;

(b) sentences imposed on other criminals in the same jurisdiction; and

(c) sentences imposed for the commission of the same crime in different jurisdictions.

*Solem v. Helm*, 463 U.S. at 292 (1983) (overruled in *Harmelin v. Michigan*, 501 U.S. 957, 965-66 (1991), to the extent that it found a guarantee of proportionality in the Eighth Amendment). *Rummel v. Estelle*, 445 U.S. 263 (1980), serves as a guide in the determination of this threshold comparison. The defendant in Rummel was sentenced to life in prison with the possibility of parole under a recidivist statute for a third non-violent felony conviction. Although the total loss from the three crimes was less than $250.00, the United States Supreme Court found Rummel's sentence to be proportionate and not violative of the Eighth Amendment. *Id.*

¶29. In light of *Rummel*, it cannot be argued that Gibson's sentence was grossly disproportionate to his crime. For crimes classifiable as felonies in which significant terms of imprisonment in the state penitentiary

can be given, the length of the sentence actually imposed is purely a matter of legislative prerogative. *Hopson v. State*, 625 So. 2d 395, 404 (Miss. 1993). Therefore, as long as the sentence is within the limits of the statute, the imposition of such sentence is within the sound discretion of the trial court and this Court will not reverse it. On balance, these facts do not lend themselves to a finding that Wall received a sentence grossly disproportionate to his crimes. The punishment for the crime of aggravated assault is no more than twenty (20) years in the penitentiary. The punishment for aggravated assault upon a law enforcement officer is no more than thirty (30) years in the penitentiary. Although Gibson was sentenced to the maximum time on both crimes, it was well within the limits of the statute. Therefore, an extended proportionality review under *Solem* is not warranted. Giving deference to the trial judge on the imposition of Gibson's sentence, we find that there is no merit to this assignment of error.

### VI. WHETHER GIBSON WAS DENIED A FAIR TRIAL DUE TO THE EFFECT OF CUMULATIVE ERRORS MADE AT TRIAL?

¶30. Gibson finally invokes the cumulative error doctrine in asserting that his conviction should be reversed. Because he did not present this argument in the trial court, this issue may not be raised on appeal. *Howard v. State*, 507 So. 2d 58, 63 (Miss. 1987). This Court has held that "[a] trial judge cannot be put in error on a matter which was not presented to him for decision." *Howard*, 507 So. 2d at 63.

¶31. Notwithstanding the procedural bar, this Court will discuss this issue on its merits. Gibson claims that cumulative individual errors operated to deprive him of a fundamentally fair trial. This Court has held that individual errors, not reversible in themselves, may combine with other errors to make up reversible error. *Hansen v. State*, 592 So. 2d 114, 142 (Miss.1991); *Griffin v. State*, 557 So. 2d 542, 553 (Miss.1990). The question under these and other cases is whether the cumulative effect of all errors committed during the trial deprived the defendant of a fundamentally fair and impartial trial. Where there is "no reversible error in any part, ... there is no reversible error to the whole." *McFee v. State*, 511 So. 2d 130, 136 (Miss.1987). We have examined each one of Gibson's complaints and hold the cumulative effect of all alleged errors was not such as to deny the defendant a fundamentally fair trial. See Miss. R. Evid. 103(a); *Williams v. State*, 595 So. 2d 1299, 1310 (Miss.1992). In fact, we have determined that all five of Gibson's assignments of error lack merit. Therefore, this Court further concludes that the cumulative effect of these alleged errors do not merit reversal of Gibson's guilt.

### CONCLUSION

¶32. Specifically, this Court finds that: (1) the trial court did not commit reversible error in denying Gibson's motion for a directed verdict and a new trial; (2) the trial court did not commit reversible error in granting jury instruction P-6; (3) the trial court did not commit reversible error in denying jury instruction D-8 and a simple assault instruction; (4) the trial court did not commit reversible error in overruling Gibson's *Batson* objection during the jury selection; (5) the sentence rendered by the trial court was not grossly disproportionate and shockingly excessive to the crimes for which Gibson was found guilty; and (6) Gibson was not denied a fair trial due to the effect of cumulative errors on the part of the trial judge.

¶33. **COUNT I: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT II: CONVICTION OF AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF**

**A FINE AFFIRMED. COUNT II SHALL RUN CONSECUTIVELY WITH COUNT I.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR. BANKS, J., CONCURS IN RESULT ONLY.**