MYERS, J.,
for the Court.
¶ 1. Lamarcus Hall was convicted in the Circuit Court of Hinds County for the murder of Demarcus Watson. He was sentenced to a term of life in the custody of the Mississippi Department of Corrections. Feeling aggrieved, Hall perfected the present appeal and assigns the following errors:
I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING AUTOPSY PHOTOGRAPHS TO BE INTRODUCED INTO EVIDENCE.
II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT GRANTING HALL’S PROFFERED MANSLAUGHTER INSTRUCTION.
III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT HALL’S MOTION FOR A DIRECTED VERDICT, OR IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL.
STATEMENT OF FACTS
¶ 2. Watson was shot to death outside a lounge in Bolton, Mississippi. Hall was indicted for Watson’s murder pursuant to Mississippi Code Annotated Section 97-3-19(l)(a) (Rev.2000). Hall pled not guilty and a trial was conducted in the Circuit Court of Hinds County. The State tendered seven witnesses during its case-in-chief.
¶ 3. First, the State called Monica Hill. Hill testified that Watson approached her in the lounge and grabbed her in a sexually inappropriate manner. Hill told Watson not to do that and he cursed her. Later that evening, Hill was in the parking lot with her friends and saw Watson exit the lounge. Hill tried to remain unnoticed but Watson came up behind her and again grabbed her in an inappropriate manner. Hill again told Watson not to do that. Watson apologized and began to walk off.
¶ 4. Hill testified that she then heard a man nearby tell Watson, “It’s them Jackson B’s. Spit in their big face.” Hill stated that Watson then turned around and spit in her face. Hill began to hit Watson and the two began fighting. Hill then heard a gunshot and saw Watson fall to the ground. Immediately thereafter, her cousin, Hall, came up and kicked Watson.
¶ 5. The State’s second witness was La-quanda Davis. She testified that she saw Watson grab Hill and witnessed the ensuing altercation. Davis also stated that she heard a gunshot and saw Watson fall to the ground. Like Hill, Davis also saw Hall approach Watson and kick him.
¶ 6. Next, the State called Marty Bra-cey. He testified that he had known Watson his whole life and rode with Watson to the lounge that night. Bracey observed the altercation between Hill and Watson and tried to break up the fight. Bracey stated that he heard a gunshot about two minutes later. Bracey testified that he saw a person fire the shot but was unable to identify him. Bracey did testify that the shooter was a tall black male. Bracey described the shooter’s hand as coming in a downward fashion and said the gunshot was fired at point blank range.
¶ 7. The State then called Douglas Clayton. Clayton was Watson’s cousin and testified that he observed the altercation. As he approached Watson, Clayton testified that he heard his cousin ask Hill, ‘Why you hitting me?” Clayton stated that Hill was hitting Watson but Watson did not know why. Clayton testified that he saw Hall kill Watson. Clayton stated that “he (Hall) just threw up the gun and killed him at close range.” Clayton also stated that Hall said, “that’s my cousin” as he pulled the trigger. Like the others, *264 Clayton also witnessed Hall kick Watson while Watson was on the ground.
¶ 8. The State then called Chris Burton. He testified that he rode to the lounge with his cousin, Tyrone Christian. Burton stated that he did not see any of the shooting but did hear a gunshot. Burton stated that when he, heard the gunshot he and his cousin got in their car. Shortly thereafter, Hall approached the two men and asked for a ride back to Jackson. In transit, Burton testified that Hall admitted to killing Watson because “he spit on his cousin (Hill) and on his (Hall’s) hand.”
¶ 9. The State’s sixth witness was Investigator Steve Bailey of the Hinds County Sheriffs Department. Investigator Bailey testified that Clayton selected Hall from a photo lineup.
¶ 10. Finally, the State called Doctor Steve Hayne. Dr. Hayne is a pathologist and testified as to the cause of death. Dr. Hayne stated that Watson died from a single gunshot wound over the left eye. Dr. Hayne also stated that the entrance wound indicated that the shot was fired at close range.
¶ 11. The State rested and Hall called four witnesses (including himself). First, Tyrone Christian took the stand. Like Burton, Christian stated that he did not see Watson get shot but he did hear the gunshot. Christian testified that he did give Hall a ride back to Jackson. Christian also stated that his cousin, Chris Burton was in the car. However, Christian stated that Hall never told him that he shot anyone.
¶ 12. Daniel Spann was the defense’s second witness. Spann testified that both Watson and Hill were at the same lounge the night before the shooting occurred. Spann stated that he saw Watson grab Hill inappropriately that night as well. Spann stated the next day, he heard Hill state that if Watson approached her that night she was going “to handle her business.” Spann also stated that Hill had a gun.
¶ 13. According to Spann, Watson approached Hill like he had a weapon and Hill shot him. Spann testified that Hill then gave the gun to Christian. Spann testified that he was about five to six feet' away from Hill when the shooting occurred. Spann stated that Hill was about ten feet away from Watson when she allegedly shot him. Finally, Spann testified that Hill was approximately six feet tall. Spann stated that he did not report his story to the police for various reasons.
¶ 14. Hall’s sister, Trina Davis, was the defense’s third witness. Trina Davis described Hill’s physical characteristics and stated that she saw Hill di'inking alcoholic beverages on the evening of the shooting.
¶ 15. Finally, Hall testified on his own behalf. He stated that he went over to his sister’s house on the afternoon in question. Hall stated that he stayed there until 10:30 that night. Hall stated that he and La-quanda Davis arrived at the lounge around 11:00. Hall stated that he had been drinking for about twelve hours. Hall admitted that he was in the parking lot but denied seeing the altercation between Hill and Watson. ' Hall stated that he did hear a single gunshot and estimated that he was standing thirty feet from where it occurred. Hall testified that he did ride home with Christian and Burton but denied the fact that he admitted to shooting Watson.
¶ 16. After being instructed, the jury deliberated and returned a guilty verdict. Hall was sentenced to a term of life in the custody of the Mississippi Department of Corrections. Hall filed a motion for judgment notwithstanding the verdict, or in the alternative, motion for a new trial but the trial judge denied it. Thereafter, Hall filed a timely notice of appeal.
*265 LEGAL ANALYSIS
I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING AUTOPSY PHOTOGRAPHS TO BE INTRODUCED INTO EVIDENCE.
¶ 17. Hall argues that the trial court committed reversible error in admitting two autopsy photographs into evidence. Hall argues that the only purpose of those photographs was to “arouse anger and fuel passion” against him.
¶ 18. It is well settled that the “admission of evidence, including photographs, is left to the sound discretion of the trial judge.” Minor v. State, 831 So.2d 1116, 1120 (¶ 12) (Miss.2002). “A photograph, even if gruesome, grisly, unpleasant, or even inflammatory, may still be admissible if it has probative value and its introduction into evidence serves a meaningful evidentiary purpose.” Id. (quoting Noe v. State, 616 So.2d 298, 303 (Miss.1993)).
¶ 19. During Dr. Hayne’s testimony, the prosecutor presented him with two photographs. The first photograph depicts the entry wound of the gunshot which was over Watson’s left eye. The second photograph is simply an enlargement of the first. Dr. Hayne performed the autopsy on Watson and explained that those particular photographs were taken after the decedent had been cleaned. Dr. Hayne stated that the two photographs were taken in order to document the facial characteristics and injuries to the decedent’s face.
¶ 20. In overruling Hall’s objection, the trial judge admitted the photographs into evidence. The trial judge found that neither photograph was “unduly prejudicial or gruesome so as to outweigh the probative value.” We agree. The two pictures have probative value in at least two respects. The first photograph identifies the location of the fatal wound. The second photograph was useful in showing the jury evidence of “tattooing” on Watson’s face. According to Dr. Hayne, “tattooing” was a term used when unburnt fragments of gunpowder embed immediately around the entrance of a gunshot wound. Dr. Hayne testified that this characteristic was direct evidence that the gunshot was a “near contact wound.” In other words, the end of the muzzle of the weapon was only a matter of inches away from the bullet’s entry point when the gun was discharged.
¶ 21. We agree with the trial court’s assessment that these autopsy photos have probative value and find that it was not error to admit them into evidence. As a result, this assignment of error must fail.
II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT GRANTING HALL’S PROFFERED MANSLAUGHTER INSTRUCTION.
¶ 22. Hall argues that the trial court committed reversible error in failing to grant jury instruction D-7. Hall argues that “the very nature of the offense leads itself to an instruction for manslaughter.”
¶ 23. In reviewing challenges to jury instructions, the instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context. Stack v. State, 860 So.2d 687, 697 (¶ 24) (Miss.2003). The accused is entitled to a manslaughter instruction only where there is an evidentiary basis in the record. Jacobs v. State, 870 So.2d 1202, 1209 (¶ 17) (Miss.2004). “Such instructions should not be granted indiscriminately, nor on the basis of pure speculation.” Id. (quoting Wilson v. State, 639 So.2d 1326, 1329 (Miss.1994)).
¶ 24. The record reveals that Hall never offered any mitigating evidence that would justify manslaughter rather than *266 murder. See. Goodin v. State, 787 So.2d 639, 656 (¶ 57) (Miss.2001). Hall was indicted, tried, and convicted for murdering Watson, not Hill. Any mitigation that could have developed from Hill and Watson’s altercation cannot be transferred to Hall’s actions. There was no evidence that Hall had a disagreement with Watson. In fact, Hall’s defense was that he did not shoot Watson.
¶ 25. As a result, it seems perfectly clear that Hall was not entitled to a jury instruction on the lesser-included offense of manslaughter. For these reasons, Hall’s second assignment of error must fail.
III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT HALL’S MOTION FOR JNOV, OR IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL.
¶26. Hall contends that the evidence was insufficient to convict him because Watson had no bruises on his midsection. Hall contends that this fact contradicts eyewitness testimony that he kicked Watson after Watson was shot. Hall also alleges that the witness testimony was unreliable.
¶ 27. A motion for judgment notwithstanding the verdict challenges the sufficiency of evidence while a motion for a new trial challenges the weight of evidence. May v. State, 460 So.2d 778, 780-81 (Miss.1984). When an appellant challenges the sufficiency of the evidence, all evidence and inferences tending to support the verdict must be accepted as true. Gibson v. State, 731 So.2d 1087, 1092 (¶ 12) (Miss.1998). All evidence that favors the appellant must be disregarded. Id. Consequently, we will not disturb a jury’s finding unless it is found that no reasonable and fair-minded hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. Id.
¶ 28. Hall also contends that the verdict returned against him was against the overwhelming weight of evidence. Hall challenged the weight of evidence with a motion for a new trial. “This Court will reverse denials of motions for a new trial where the trial court abused its discretion.” Gray v. State, 817 So.2d 608, 611(¶ 5) (Miss.Ct.App.2002). “The evidence supporting the verdict is viewed as true and the verdict will not be disturbed unless it is so contrary to the overwhelming weight of evidence that to allow it to stand would work an unconscionable injustice.” Id. Finally, “[m]atters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury.” Wetz v. State, 503 So.2d 803, 808 (Miss.1987).
¶ 29. We find that sufficient evidence exists in the record to justify the jury’s verdict. First, there was an eyewitness to the shooting. Clayton testified that he saw Hall shoot Watson. Clayton testified that Hall stated, “that’s my cousin,” and shot Watson at close range. Clayton also identified Hall from a photo lineup.
¶ 30. Second, a witness testified that Hall admitted to committing the crime. Chris Burton testified that he was in the car with Hall after the two men had left the lounge. Burton testified that Hall admitted to shooting Watson because Watson spit on Hill.
¶ 31. It should be noted that no less than three people saw Hall kick Watson after Watson was shot. Also, Dr. Hayne’s testimony corroborates the eyewitness testimony that Watson was shot at close range.
¶ 32. We also find no merit to the alleged unreliability of the witnesses at trial. Hall makes much of the fact that Watson’s *267 autopsy showed no sign of bruising to the mid-section despite multiple eyewitness accounts of Hall kicking Watson. However, none of the witnesses that saw Hall kick Watson testified as to where Hall kicked him. In other words, no one ever testified that Hall kicked Watson in the stomach or back.
¶ 33. Moreover, we remain mindful that the jury is the entity charged with weighing the conflicting evidence of witnesses. In fact, our supreme court has expanded on this notion by stating:
Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into finding of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses, as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.
Kingston v. State, 846 So.2d 1023, 1026 (¶ 11) (Miss.2003) (citing Groseclose v. State, 440 So.2d 297, 300 (Miss.1983)).
¶ 34. After applying the caselaw listed above, we hold that the trial judge did not err in denying Hall’s motion for judgment notwithstanding the verdict. In addition, we hold that the trial judge did not abuse his discretion in failing to grant a new trial. As a result, Hall’s final assignment of error must fail.
¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, AND BARNES, JJ., CONCUR.