977 So.2d 431 (2008)
Dennis JEFFERSON a/k/a Dennis E. Jefferson, Appellant.
v.
STATE of Mississippi, Appellee.
No. 2006-KP-01543-COA.
Court of Appeals of Mississippi.
March 18, 2008.
*432 Dennis Jefferson, appellant, pro se.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before KING, C.J., ROBERTS and CARLTON, JJ.
ROBERTS, J., for the Court.
¶ 1. Dennis Jefferson was indicted along with his two co-defendants, who separately pleaded guilty to burglary, of "House Burglary," as described in the indictment, of 4460 White's Lane, Yazoo County, in violation of Mississippi Code Annotated section 97-17-23 (Rev.2006), which makes it a crime to break and enter the dwelling house of another with the intent to commit some crime therein. Following a trial in *433 the Circuit Court of Yazoo County, Jefferson was found guilty by a jury of burglary of a building other than a dwelling, sentenced to a term of seven years, and ordered to pay a $10,000 fine, court costs, and attorney's fees.
¶ 2. Subsequent to a denial of Jefferson's motion for new trial, the instant appeal followed. On appeal, both Jefferson and his appellate counsel filed separate briefs. Between the two briefs Jefferson raises several issues on appeal, questioning the sufficiency of the evidence and alleging trial court error and ineffective assistance of counsel. Finding that the evidence presented at trial is not sufficient to uphold the jury's verdict, we reverse and remand the case to the trial court for resentencing on the lesser-included offense of willful trespass.

FACTS AND PROCEDURAL HISTORY
¶ 3. Thomas Coleman testified that on May 28, 2005, he saw a car stopped, with its hood up, in front of his next door neighbor's house located at 4460 White's Lane in Yazoo County. He saw two black males coming out of the garage with something in their hands. He went over to the pair, who were in front of their car at this point, and asked if they needed any help. He testified that they stated the car had "run hot" but indicated they did not need any help. The pair then put down the hood and left. When they left, Coleman noticed a weedeater in the bushes nearby. He decided to go back to his house and wait inside his truck to see if the pair would come back. He stated that ten or fifteen minutes later the same vehicle came back, but it did not stop. Coleman pulled in behind it and a high speed chase began. However, Coleman was not able to catch the vehicle. He returned home and called the police. When asked to make an in-court identification of the two males he saw coming out of the carport, Coleman could not do so.
¶ 4. Lenoria McGee, a co-defendant, was next to testify. She stated that she and Bobby Huffman, another co-defendant, asked Jefferson for a ride that morning. She testified that Huffman asked Jefferson to take him to 4460 White's Lane, and Jefferson complied. While she and Jefferson stayed in the car, Huffman went behind the house and came back with a fishing rod, a leaf blower, and a white bucket. According to McGee's testimony, when she saw Coleman's truck coming up behind them, she alerted the other two. Huffman then threw the leaf blower and the fishing pole in a ditch and told Jefferson to pop the hood to make it look like the car had overheated. Once Coleman arrived, Jefferson got out of the car and told Coleman they did not need any help. They then left and visited another individual down the road from 4460 White's Lane, but they returned a few minutes later to, she assumed, retrieve the stolen leaf blower and fishing pole. However, they never stopped because Coleman pulled in behind them and gave chase. After losing Coleman, they discarded the bucket and the extension cord. Coleman and McGee were later found by police at a gas station and arrested.
¶ 5. Barbara Allen, the co-owner of the residence at 4460 White's Lane, took the stand. She stated that the carport was open in the front, and a storage shed was located behind the house. She stated that the house had not been entered, but some hope chests in the nearby metal storage shed had their lids taken off. She could not be sure that the alleged burglars did it, but she was certain the chests had their lids on them the last time she saw them. She further clarified that she did not think anything was missing from the shed, but *434 she did think the chests had been opened. There was no testimony of any forced entry into the metal shed; nor, for that matter, any testimony that the shed doors were closed or open prior to any possible entry. As to the items actually stolen, she stated all of them came from the open-area carport. All stolen items were later returned to the Allens.
¶ 6. Deputy William Gilmore was next to testify. The bulk of his time on the stand was spent relaying what Jefferson said in a statement he gave to the police. According to Gilmore, Jefferson stated that they stopped at the house because the car was overheating, and Huffman asked him to put the hood up. Huffman then went to the house and knocked on the door. He later returned with the stolen items in his possession. Jefferson refused to allow Huffman to put the items in his car, and Huffman dropped the leaf blower and the fishing pole in a ditch. At this point, Coleman came up and asked if they needed any help. Gilmore then testified that Jefferson stated that they drove up the street, and Huffman placed the extension cord in the trunk and discarded the bucket. On the way back down the road, Coleman pulled in behind them, but they eventually evaded his pursuit. Jefferson then wrote in his statement that they threw the extension cord behind an apartment building, and they were later found at the BP gas station. Gilmore also testified that there was a closed shed at the end of the carport and a separate metal shed behind the house. He added that all items taken were from the carport.
¶ 7. The last person to testify for the State was Deputy Timothy Jones. Jones testified that he was involved in the arrest of Jefferson. Jones stated that once Jefferson was arrested, Jefferson showed him where the extension cord, bucket, and other items were located. The State then rested. Jefferson then made a motion for directed verdict that was denied by the trial court.
¶ 8. Jefferson was then called to the stand by the defense. He testified that the morning of May 28, 2005, he was delivering some animal feed to his wife's cousin when he saw McGee and Huffman walking on the street. They asked him for a ride to the end of the street, but when they arrived, Huffman offered Jefferson five to ten dollars to drive him to a "Deputy Booker's" home so that he could ask for a loan. When they were close, his car began to overheat. Jefferson stated that Huffman told him he knew the people at 4460 White's Lane but not to park in the driveway. While he opened the hood and took off the radiator cap, Huffman went to knock on the door. Jefferson thought someone answered the door, and he saw Huffman go around to the back. He heard what sounded like a screen door close, and Huffman came back a few minutes later with a leaf blower, a fishing pole, and a bucket he assumed had water in it. He told Huffman he could not put the other items in his trunk because it was full of feed, so Huffman placed the items by a bush in the yard. At this point, Coleman pulled in behind them and asked if they needed any help. Huffman closed the hood, and Jefferson assumed they were ready to go so he declined assistance. They drove further down the street, but Booker was not at home so Jefferson turned around and went back the way he came. When they passed 4460 White's Lane, Coleman "fishtailed" out of his driveway and "rode [Jefferson's] bumper for a few blocks." They lost Coleman when they reached town. He told Huffman to throw the extension cord out of his car, and they went to the BP gas station so Huffman could get the five or ten dollars he owed him. While at the gas station, two police officers arrested him. Jefferson *435 stated he never entered the yard or house, and he never picked up any items.
¶ 9. Huffman then testified for the defense. He stated that the three were driving around, and he asked Jefferson to take him to James Robinson's house to borrow some money. On the way, Huffman saw some items under the carport at 4460 White's Lane and asked if the others were "down for a lick."[1] While he was in the carport, Jefferson and McGee were acting as lookouts. Jefferson raised the hood so it would look like the car was overheating. When Huffman was on his way back, Coleman's truck pulled up, and he dropped the leaf blower and the fishing pole in the bushes. Coleman asked Jefferson if everything was alright, and Jefferson said they were fine. They drove down the road to Booker's house and "got the water for real at his house." Huffman asked if they were going back to get the items, and they turned around. When they passed the house, Coleman began chasing them, but they lost him before they got back to town. They threw the extension cord out at an apartment building and went to the gas station. While there police officers pulled in behind Jefferson and arrested him and McGee, but the officers did not notice Huffman. However, he was arrested two days later.
¶ 10. Jefferson, Huffman, and McGee were indicted for "House Burglary" in violation of Mississippi Code Annotated section 97-17-23 (Rev.2006). As noted above, Huffman and McGee eventually pleaded guilty, while Jefferson proceeded to trial. After the State rested its case-in-chief, Jefferson motioned the trial court for a directed verdict based upon his assertion that there had been no breaking or entering of a dwelling house. The State explained that the case initially went forward on the theory that the stolen items were taken from a locked metal storage compartment within the carport but conceded that the evidence was somewhat lacking. The State further countered that there was ample evidence to proceed upon the "lesser-included felony of burglary of another building."[2]
¶ 11. Somewhat unclear in the reasoning for its holding, the trial court denied Jefferson's motion for directed verdict, stating:
[t]here's been sufficient proof so far that the fishing rods, the bucket, the extension cord, and the blower were taken, either from the storage portion of the carport or  and I believe Ms. Allen said that she didn't know anything that was actually stolen from the unconnected metal building. But there is sufficient proof of the defendant's participation in the crime by faking car trouble. . . . [3]
Following the exchange detailed above, the trial court amended the State's jury instruction six, which laid out the elements of burglary of a building other than a *436 dwelling, to include language that Jefferson could be alternatively guilty if the jury found that he aided and abetted Huffman. After nineteen minutes of deliberation, the jury returned a verdict of guilty of burglary. Jefferson was sentenced to seven years in prison, fined, and assessed court costs and fees. This appeal followed the denial of Jefferson's motion for a new trial.

ANALYSIS
I. WHETHER THE EVIDENCE WAS LEGALLY SUFFICIENT TO UPHOLD A CONVICTION OF BURGLARY OF A DWELLING.
¶ 12. Within his motion for a new trial, Jefferson argued that the evidence presented at trial was legally insufficient to uphold the jury's verdict. On appeal, his attorney calls into question the sufficiency of the evidence and claims the trial court erred in denying Jefferson's motion.[4]
¶ 13. The standard of review for a claim of insufficiency of the evidence is as follows:
the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." [Carr v. State, 208 So.2d 886, 889 (Miss.1968).] However, this inquiry does not require a court to ["]ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.["] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citations omitted) (emphasis in original). Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. Edwards v. State, 469 So.2d 68, 70 (Miss.1985) (citing May v. State, 460 So.2d 778, 781 (Miss.1984)); see also Dycus v. State, 875 So.2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. Edwards, 469 So.2d at 70; see also Gibby v. State, 744 So.2d 244, 245 (Miss.1999).
Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005).
¶ 14. Mississippi Code Annotated section 97-17-23 (Rev.2006) states:
Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether *437 there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the Penitentiary not less than three (3) years nor more than twenty-five (25) years.
"Dwelling house" is defined as "[e]very building joined to, immediately connected with, or being a part of the dwelling house. . . ." Miss.Code Ann. § 97-17-31 (Rev.2006). Viewing the evidence in a light most favorable to the prosecution the following picture emerges. Jefferson was possibly involved in the attempted theft of a leaf blower, a fishing pole, a bucket, and an extension cord, either directly, as Coleman testified he saw two men coming from the carport, or indirectly, as an aider and abetter in his capacity as a lookout. From a review of the testimony and pictures in the record, it is clear that the three-car carport from which the items were taken is a freestanding structure, closed in on three sides and entirely open in the front. There was no alleged breaking that took place in the carport.
¶ 15. In addition, Allen, the owner of the home, testified that she believed the shed behind the house was entered, but nothing was missing. Based on the pictures in evidence, it is clear that the shed is not attached to the dwelling house in any way. It sits adjacent, but it is not connected to the dwelling. Also, Allen was clear that the condition of the hope chests locked within the shed had changed; however, she did not directly testify, or insinuate, that the shed's door was manipulated in order to gain entry to the shed. In fact, there was absolutely no testimony or other evidence that the shed was broken into at all, only that the hope chests inside were disturbed.
¶ 16. Therefore, it is clear there was a theft from an open, freestanding structure, and a possible entry of a freestanding shed. Neither of these events satisfy the elements of section 97-17-23. In addition to the lack of evidence of a breaking into the shed, it does not meet the statutory definition of "dwelling house," but it is more akin to a non-dwelling house. "[A] non-dwelling house is a building that is not joined to, immediately connected with or forming a part of a dwelling house." Edwards v. State, 800 So.2d 454, 462(¶ 16) (Miss.2001). Also, there was no breaking and entering involved in the open carport. Based on the evidence presented at trial, Jefferson could not be guilty of violating the statute under which he was indicted. Given the evidence above, no rational trier of fact could find Jefferson guilty of violation of section 97-17-23. Likewise, no rational trier of fact could find Jefferson guilty of violation of section 97-17-33, burglary of a building other than a dwelling. There simply was no proof of any unlawful breaking and entering of either the dwelling or metal shed.
¶ 17. Implicit in every conviction of burglary, however, is a finding that the defendant committed a trespass. Anderson v. State, 290 So.2d 628, 628-29 (Miss.1974); see also Hill v. State, 929 So.2d 338, 341(¶ 11) (Miss.Ct.App.2005) (trespass is a lesser-included offense of every burglary). Under the direct remand rule, when a verdict is reversed based upon the conclusion that the evidence presented at trial was insufficient to uphold a conviction of burglary this Court may remand solely for resentencing on the charge of trespass where the evidence establishes such an offense. Hill, 929 So.2d at 341 (¶¶ 10-11). The elements of trespass include the willful or malicious entrance upon another's real or personal property. Miss.Code Ann. § 97-17-87 (Rev.2006).
¶ 18. Viewing the proof in a light most favorable to the prosecution, we find that *438 the evidence presented at trial was sufficient to uphold a finding of guilty upon a charge of trespass. This conclusion stems from either Jefferson's participation as a principle in the trespass, which could be gleaned from Coleman's testimony, or as an aider and abetter as a result of Huffman's testimony. Therefore, based upon the direct remand rule, Jefferson's conviction of burglary of a dwelling is reversed and the case is remanded for resentencing for willful trespass.
II. WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S JURY INSTRUCTIONS SIX AND SEVEN.
¶ 19. Jefferson next argues that allowing jury instructions six and seven was error. He correctly claims that he was indicted of burglary of a dwelling in violation of Mississippi Code Annotated section 97-17-23, and the jury instructions in question pertained to burglary of a building other than a dwelling in violation of Mississippi Code Annotated section 97-17-33 (Rev.2006). However, Jefferson's trial counsel failed to object to the offered instructions. Such a failure constitutes waiver of that issue on appeal. Davis v. State, 568 So.2d 277, 279 (Miss.1990). Therefore, this issue is without merit.
III. WHETHER JEFFERSON RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
¶ 20. Jefferson next argues that his attorney was constitutionally ineffective in failing to request lesser-included offense jury instructions for accessory-after-the-fact, attempted petit larceny, and/or trespassing. He also claims his trial counsel was ineffective in failing to object to jury instruction number six offered by the State. In order to prove ineffective assistance of counsel an appellant must show that his counsel's performance was deficient and that this deficiency prejudiced his defense. Puckett v. State, 879 So.2d 920, 935(¶ 43) (Miss.2004) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). However, the supreme court has stated that an appellate court should not reach the merits of an ineffective assistance of counsel claim brought on direct appeal unless we are satisfied "the record affirmatively shows ineffectiveness of constitutional dimensions, or . . . the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc. are not needed." Read v. State, 430 So.2d 832, 841 (Miss.1983). In this case, neither condition is satisfied.
¶ 21. Therefore, in consideration of our resolution of Issue I and the fact that it is not affirmatively shown from the record alone that Jefferson's counsel was ineffective for the reasons put forth by Jefferson, we find this issue without merit. It is dismissed, however, without prejudice.
IV. WHETHER THE CUMULATIVE EFFECT OF JEFFERSON'S PROPOSED ERRORS WARRANT REVERSAL OF HIS CONVICTION AND REMAND FOR A NEW TRIAL.
¶ 22. In Jefferson's final issue he argues that we should reverse and remand his case for a new trial because the cumulative effect of the errors he has raised warrants such a holding. However, for there to be reversible error to the whole, there must be error in part. Gibson v. State, 731 So.2d 1087, 1098(¶ 31) (Miss. 1998). Notwithstanding Issue I, Jefferson's other issues were found to be without merit. Therefore, without the finding of error, either harmless or harmful, in the remaining parts of Jefferson's appeal, *439 there can be no finding of error worthy of remand for a new trial in the whole. This issue is without merit.

CONCLUSION
¶ 23. For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded to the trial court for resentencing on the lesser-included offense of willful trespass.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY IS REVERSED AND THIS CASE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YAZOO COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
NOTES
[1] Huffman did not explicitly explain what he meant by "down for a lick"; however, he did state that Jefferson asked what he meant, and he responded, "I see some stuff up under the carport that we could get, you know."
[2] On this point, the State was incorrect as "burglary of a building other than a dwelling is not a lesser-included offense of burglary of a dwelling." Sheffield v. State, 881 So.2d 249, 254(¶ 22) (Miss.Ct.App.2003).
[3] It is clear, however, that the trial court agreed with the State's alternate theory of the case. During the jury instruction conference, the trial court denied a defense instruction laying out the elements of burglary of a dwelling in favor of the State's jury instruction six, which stated that Jefferson was guilty of burglary if he aided and abetted in the breaking and entering of the storage building. The trial court stated, "[t]he building essentially broke into and entered into was not joined to, because [the State is] going after burglary rather than burglary of a dwelling."
[4] In a supplemental brief authored by Jefferson he raises an issue entitled: "Whether [the] verdict was against the overwhelming weight of [the] evidence." However, within his argument in support of the issue he only challenges the sufficiency of the evidence surrounding his conviction. Therefore, in our consideration of the issue of sufficiency brought forth by Jefferson's attorney we simultaneously address Jefferson's mistitled issue.