953 So.2d 306 (2007)
Charlie J. WILSON, Appellant
v.
Shane STRICKLAND, Appellee.
No. 2005-CA-02235-COA.
Court of Appeals of Mississippi.
April 3, 2007.
*308 Robert W. Atkinson, Gulfport, attorney for appellant.
James Kenneth Wetzel, Gulfport, attorney for appellee.
Before LEE, P.J., BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. Charlie J. Wilson appeals the ruling of the Circuit Court of Harrison County reversing a Harrison County Court jury verdict in favor of defendant Charlie Wilson and remanding the matter for a new trial. Wilson was sued by Shane Strickland in county court for damages for injuries allegedly sustained in an automobile accident. Strickland appealed the jury's verdict to the circuit court, claiming, inter alia, that the county court erred in denying a peremptory challenge by Strickland during jury selection. The circuit court accepted Strickland's argument regarding the jury selection, but found his other issues to be without merit. Wilson now appeals to this Court. We find the circuit court was in error and reinstate the county court's judgment for Wilson.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On the evening of October 10, 2001, Shane Strickland and Charlie Wilson were involved in an automobile accident at the intersection of Highway 49 and St. Charles Street in Gulfport, Mississippi. Strickland was a back-seat passenger in an automobile driven by his friend, Peter Blake. Another friend, Shannon Farve, was also in the car. The young men, all of whom are white, were on their way to eat in celebration of Strickland's birthday. Charlie Wilson, who is black, was driving a van belonging to Grace Temple Baptist Church. He had been taking children home from the church's youth activities that evening. Wilson was making a left turn from a signaled left-turn lane when Blake's vehicle "t-boned" the church van. At the time of the accident, there were no passengers in the church van. No one involved in the accident claimed to be injured that evening.
¶ 3. Strickland sued Wilson on August 21, 2002, in Harrison County Court for injuries he claims were sustained in the automobile accident and other damages.[1] *309 The issue in dispute was which vehicle had the right-of-way. Blake claimed that he had a green light, while Wilson claimed he had a green left-turn arrow. On December 8, 2003, trial commenced with the Honorable Gaston H. Hewes, Jr. presiding. The instant issue arose during jury selection. In creating the six-juror panel, from a venire which included a total of only three black individuals, Strickland properly excused, for cause, two black jurors, and then unsuccessfully attempted to strike Zella Harris, the last remaining black venire member, using his first peremptory challenge. The following colloquy ensued between James Wetzel, counsel for Strickland; Robert Atkinson, counsel for Wilson; and the trial judge:
Mr. Wetzel: We would strike Ms. Harris.
. . . .
Mr. Atkinson: Judge, before we go on, can I ask a question about Ms. Harris?
The Court: Oh, that's a good point. Okay.
Mr. Atkinson: She never said a word in response to anything and so I would have to question, with all due respect, why she's being kicked off.
Mr. Wetzel: Okay. Do you need a
The Court:Yeah, I do. I need a racially neutral reason.
Mr. Wetzel: One, she's of Baptist faith and secondly, she works for the Harrison County DHS in the Child Support Office and I believe that because of her background and the fact that she is a Baptist, I have a real problem with that because of the Baptist Church being involved.
The Court: Well, they're not a party.
Mr. Wetzel: They're not a party but I believe that because of the Baptist Church and that's going to come in with all the witnesses Bobby is going to bring in, . . . I believe that that's going to be a problem.
Mr. Atkinson: Judge, the mere fact that she is Baptist in and of itself is all he's going on; that there was no answers to any questions by that lady.
Mr. Wetzel: Because I knew going in
The Court: Look, look. You didn't kick Hester off, he's Baptist.
Mr. Wetzel: Mr. Hester, the reason I didn't, because he is a, he's a millwright and he's a working man, he's a blue collar man and I felt like because of his background as a millwright, I felt that he would be, he would be a good juror.
The Court: I'm not going to strike her. She's the only black remaining. I, for cause, struck Necole Brown, who is black. I struck Dorothy Coleman for you, she's black.
Mr. Wetzel: But that was based on the causes. That was not peremptory challenges, Judge.
The Court: I understand the difference.
Mr. Wetzel: It would be different if I struck three, if I struck three blacks in a row on a peremptory challenge, then you could say that-you have to first determine
The Court: I've ruled. You can make your record.
Mr. Wetzel: Okay, let me, I'm just making my record. I think that the Edmondson[Edmonson] case as followed by the Mississippi Supreme Court says there has to be a showing that there is, by the use of the challenges, you have to first show that there is some type of, there is some type of use of those challenges that *310 would indicate a racial purpose for those challenges. And I have, I've only exercised one challenge and that was on her.
The Court: Yeah.
Mr. Wetzel: That was the first challenge that I used. The other ones were for cause and you granted those.
The Court: Well, the defendant is black. Every other black, for good cause, has been stricken. And I don't find that the fact that Harris is a Baptist is a racially neutral reason. So I think you made your record.
¶ 4. After the jury was empaneled, which consisted of five white jurors and Harris, Strickland called six witnesses to the stand, including: the police officer at the accident, an independent witness to the accident who is a part-time Baptist preacher, Peter Blake, Shane Strickland, Dr. Harry Danielson, and finally the defendant Wilson as an adverse witness. Wilson did not call any witnesses, but rested after Strickland's case-in-chief. In a five-to-one decision, the jury found for defendant Wilson.
¶ 5. Strickland consequently filed a motion for judgment notwithstanding the verdict ("JNOV") or alternatively a new trial. Strickland claims he received an unfair trial for several reasons, including the county court's denying his peremptory strike of Harris during jury selection. The court denied Strickland's JNOV motion, and Strickland appealed to the Harrison County Circuit Court, arguing four points of error by the county court. The circuit court, serving as an appellate court, reversed the judgment of the county court in favor of Strickland and remanded the matter for a new trial, basing its decision solely on the peremptory challenge. That court found Strickland's race-neutral reasons for the strike credible. Wilson timely appealed to this Court.

ANALYSIS
¶ 6. The United States Supreme Court, in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), held that racial discrimination through the use of peremptory strikes is prohibited. The proper analysis for a potential peremptory challenge violation has been articulated in Batson, held applicable to private litigants in civil cases in Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), and recognized by the Mississippi Supreme Court in Dedeaux v. J.I. Case Co., 611 So.2d 880 (Miss.1992). Batson requires a three-prong analysis of the validity of peremptory challenges. Batson, 476 U.S. at 96-98, 106 S.Ct. 1712. First, the opponent of the peremptory challenge must make a prima facie showing that the challenge was based on race. Id. Second, if that showing is made, the burden of proof shifts to the proponent of the strike to offer a race-neutral reason for attempting to strike the juror at issue. Id. at 97-98, 106 S.Ct. 1712. Finally, the trial court must determine whether the opponent of the strike has proven purposeful discrimination. Id. at 98, 106 S.Ct. 1712.
¶ 7. The Harrison County Circuit Court, in reviewing Strickland's appeal, reversed the county court's decision based solely on the peremptory challenge issue. In its order, the circuit court stated that Wilson was required to "make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Only then should a party be required to establish race-neutral reasons for the peremptory challenge[s]. The Court did not require, and defense counsel did not provide, a prima facie case on racial discrimination justifying the denial of the peremptory challenge." Regardless of whether Strickland may have waived his argument by voluntarily providing race-neutral reasons *311 for the strike, the circuit court stated Wilson's failure to support his Batson challenge goes to the weight of the evidence, and "[n]othing in the record sufficiently counters the race-neutral reason given [by Strickland]."
¶ 8. On appeal to this Court, Wilson argues that great deference should be given to the ruling of the county court to determine whether the race-neutral reasons given to strike Harris were credible. Also, he argues that since the county court did not require a prima facie showing by Wilson that Strickland's first peremptory challenge was racially based, and Strickland did not object to this fact but went ahead and provided alleged race-neutral reasons for his strike, Strickland waived any argument regarding the lack of a prima facie showing by Wilson. Lastly, Wilson argues that the race-neutral reasons provided by Strickland were invalid, as they were pretextual.
A. Deference to the Trial Court.
¶ 9. Our standard of review requires that this Court give great deference to the trial court's decision regarding whether the race-neutral reasons presented by the proponent of the strike are truly race-neutral reasons. Burnett v. Fulton, 854 So.2d 1010, 1016(¶ 16) (Miss.2003) (citing Walters v. State, 720 So.2d 856, 865(¶ 28) (Miss.1998)). In the context of a direct review, the trial court's decision is given great deference since the issue is a factual finding involving credibilitythat iswhether the trial judge is to believe the counsel's race-neutral explanation for the peremptory challenge. Miller-El v. Cockrell, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (citing Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)); McGilberry v. State, 741 So.2d 894, 923 (¶ 118) (Miss. 1999). For this determination, findings of fact are best suited to the trial court. United States v. Williams, 264 F.3d 561, 572 (5th Cir.2001) (citing Hernandez, 500 U.S. at 373, 111 S.Ct. 1859). "There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." Miller-El, 537 U.S. at 339, 123 S.Ct. 1029. The reviewing court analyzes only the transcripts of voir dire and is not as reliable at determining credibility as the trial judge. Id. The Mississippi Supreme Court has adopted this rationale as well, finding the credibility of the challenging attorney is often decisive. Stewart v. State, 662 So.2d 552, 559 (Miss. 1995) (citing Hernandez, 500 U.S. at 365, 111 S.Ct. 1859). Thus, the trial judge's decision will only be reversed when the decision is clearly erroneous or against the overwhelming weight of the evidence. Gary v. State, 760 So.2d 743, 748 (¶ 110) (Miss.2000) (citations omitted).
¶ 10. Strickland, in his brief, does not address this well-established standard of review, but instead argues that the circuit court was correct in reversing the county court's decision denying the peremptory challenge. However, this Court agrees that the most accurate determination of whether a peremptory challenge is truthful or pretextual is made by the trial judge. See Collins v. State, 817 So.2d 644, 656(¶ 32) (Miss.Ct.App.2002) (citing Humphrey v. State, 759 So.2d 368, 384(¶ 50) (Miss.2000)). On direct appeal, we find the circuit court did not give proper weight to the county court's determination, but instead reversed primarily on the weight of the evidence. However, we find the evidence presented sufficient, and the decision of the county court was not clearly erroneous.
B. The Prima Facie Showing is Rendered Moot.
¶ 11. The first step in a Batson analysis is for the opponent of the strike to *312 make a prima facie showing that the peremptory challenge was based on race. Batson, 476 U.S. at 96-97, 106 S.Ct. 1712. To establish this prima facie showing, the opponent of the strike must prove that the juror: (1) is a member of a cognizable racial group, (2) that the proponent has exercised peremptory challenges to remove from the venire members of the opposing party's race, and (3) the facts and circumstances raise an inference that the proponent of the strikes used his peremptory challenge for the purpose of striking minorities. Snow v. State, 800 So.2d, 472, 478(¶ 10) (Miss.2001) (citing Walker v. State, 740 So.2d 873, 879(¶ 22) (Miss.1999)). However, the United States Supreme Court has held, and it has long been the law of this State, that whether or not a prima facie showing is made is rendered moot once the proponent of the strike offers a race-neutral reason for the peremptory challenge, and the trial court rules on the ultimate question of purposeful discrimination. Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Walker v. State, 863 So.2d 1, 28(¶ 85) (Miss.2003); Burnett v. Fulton, 854 So.2d 1010, 1014(¶ 9) (Miss.2003). The more important inquiry in a Batson analysis is whether the proponent of the strike was able to offer credible race-neutral reasons for the peremptory strikes. Collins v. State, 691 So.2d 918, 926 (Miss.1997) (citing Griffin v. State, 607 So.2d 1197, 1202 (Miss.1992)).
¶ 12. In our case, Wilson did not make a prima facie showing, and the trial court did not require that showing as the colloquy at issue unfolded. Instead, Strickland's counsel, Mr. Wetzel, proceeded to give race-neutral reasons after the trial judge requested them, which was at Wetzel's prompting. Since Wetzel gave alleged race-neutral reasons without objecting to the request, his argument on appeal that Wilson did not meet his prima facie showing of intentional discrimination is moot. Similarly, in Hernandez, the Supreme Court stated that because the prosecutor defended his peremptory strikes without prompting from the trial court, the trial court did not have a chance to rule on whether the petitioner had made a prima facie showing of intentional discrimination; however, "[t]his departure from the normal course of proceeding need not concern us." Hernandez, 500 U.S. at 359, 111 S.Ct. 1859. Once the trial judge has ruled on the challenge, the prima facie showing, which is simply a preliminary issue, is rendered moot. Id. Here too, as case law states repeatedly, the essential inquiry is not whether Wilson made his prima facie showing in opposition to the strike, but whether there was a credible race-neutral reason for the strike. We find the issue of whether Wilson established a prima facie showing is moot.
C. The Race-Neutral Reasons Proffered by Strickland were Pretextual.
¶ 13. In Batson's second analytical step, the burden shifts to the proponent of the strike to offer race-neutral justifications for the strike. Batson, 476 U.S. at 97-98, 106 S.Ct. 1712. Batson's third step is to determine if the reasons proffered by the proponent of the strike are credible or pretextual. Id. The Mississippi Supreme Court has identified five indicia of pretext when analyzing alleged race-neutral reasons under Batson for peremptorily striking jurors: "(1) disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge; (2) the failure to voir dire as to the characteristic cited; . . . (3) the characteristic cited is unrelated to the facts of the case" (4) "lack of record support for the stated reason"; and (5) "group-based traits." Mack v. State, 650 So.2d 1289, 1298 (Miss. *313 1994) (citing Whitsey v. State, 796 S.W.2d 707, 707 (Tex.Crim.App.1989)). Likewise, other findings of fact at the trial court level may assist in determining whether the strike was pretextual, such as the nature of the voir dire relating to the reasons the strike was exercised; the relationship between the reasons given for the strike and the facts of the case; the demeanor of the attorney; and disparate impact upon minorities. Snow, 800 So.2d at 481(¶ 19) (Miss.2000) (citing Randall v. State, 716 So.2d 584, 588(¶ 21) (Miss.1998)).
¶ 14. Wetzel, in requesting the strike, stated two alleged race-neutral reasons to justify it: that Harris was Baptist and that Harris worked for the Department of Human Services ("DHS").[2] Wetzel went on to remark that because Wilson worked for the Baptist Church at the time of the accident, even though the Baptist Church was not a party to the case, he "had a problem" with the juror. Yet, the trial judge found these alleged race-neutral reasons unpersuasive, remarking that Wetzel did not strike another juror, who was also a Baptist and white.[3]
¶ 15. In its order, the circuit court accepted Strickland's race-neutral reasons because there was no evidence in the record to contradict them and Wilson did not rebut them.[4] This Court, however, finds those race-neutral reasons to be pretextual in nature and, when examined in totality, the record does contradict them. When the treatment of a minority juror is different from the treatment of similar non-minority jurors, this may be a basis for deciding the race-neutral reason for striking the juror is invalid. Mack, 650 So.2d at 1298. It was clear that, under the totality of the circumstances, because Harris was the last black juror to be considered for the jury panel, Atkinson, attorney for defendant Wilson, was concerned that his black client would face an all-white jury. Two prior challenges for cause had stricken the only other black jurors. Strickland used his first available peremptory challenge on Harris, the last remaining black juror in the venire. This might have been proper had Strickland better justified his strike.
¶ 16. Further, Strickland's race-neutral reasons are unable to satisfy the specific findings of fact as articulated in Snow on whether a strike is pretextual, such as the totality of the circumstances of the voir dire, the relationship of the reasons with the facts of the case, and the disparate impact on a minority. Snow, 800 So.2d at 481(¶ 19). During voir dire, Strickland's counsel stated he knew some of the venire were Baptist because he saw it on their jury information cards, and he asked if anyone had a problem with the fact a Baptist church van was involved in the accident. He received no response from the venire. Harris was not questioned individually about her religion or employment and whether these factors would impair her ability to be an impartial juror. As stated above, the fact that Harris is Baptist, when the Baptist Church is not even a party to the case, and that another white Baptist juror was empaneled and not stricken, points most strongly to pretext, *314 not race-neutrality.[5]
¶ 17. Interestingly, the second race-neutral reason Strickland proffered for his peremptory strike, that Harris worked for DHS, was not pursued beyond the voir dire colloquy until after the trial was completed, during the hearing for JNOV or a new trial. During voir dire, instead, Strickland's argument centered on religious affiliation.[6] Strickland's counsel did not voir dire the venire on educational background or vocation. Further, neither the county court nor the circuit court mentioned the DHS rationale as a race-neutral factor in their respective rulings. However, during the hearing on his motion for JNOV or a new trial before the county court, Strickland's counsel brought up the fact that "education level" has been held by the supreme court to be a race-neutral reason, although Strickland did not mention education level during voir dire, but only the fact Harris worked for DHS. Wetzel made the link during the hearing, explaining his reasoning during voir dire in more detail: "[T]his is an educated woman. She works at the Welfare Department and I believe that she would not be a good juror for this case." Apparently because of her employment, Wetzel thought Harris was too well-educated to sit on this jury. Although case law abounds on finding under-education as a race-neutral rationale for peremptory strikes, in this case, neither party has cited to this Court any legal authority that being too well-educated would be a race-neutral factor for peremptorily striking a juror. Additionally, the record before this Court does not include the jury's information cards, nor do we have any information before us that identifies Harris's educational level. Therefore, the trial court, under a pretextual analysis, could properly find Strickland's DHS rational unpersuasive, especially since there was no voir dire on the subject and the record before us is void regarding juror educational level. Consequently, we cannot find, as a matter of law, that the trial court erred by rejecting Strickland's DHS rationale.
¶ 18. In his brief, Strickland also claims that because Wilson did not rebut Strickland's peremptory challenge with specific arguments of discriminatory intent, his argument is waived according to Burnett v. Fulton, 854 So.2d 1010, 1015(¶ 16) (Miss. 2003). Additionally, Strickland states that not rebutting the race-neutral reasons makes it improper for the trial court to reverse on that point. See Davis v. State, 551 So.2d 165, 172 (Miss.1989). However, upon reading Burnett, the case does not stand for the proposition that the nonstriking party is required to rebut the reasons for the strike. Instead, Burnett found the opponent of the strike's argument was waived because there were no other arguments offered in opposition to the strike, and that court was forced to base its decision solely on the reasons given by the striking party. Burnett, 854 So.2d at 1014(¶ 11). Moreover, in Davis, the supreme court noted that "[t]he Batson Court specifically declined to formulate a procedure to be followed by trial courts in dealing with this question [of rebuttal]." Davis, 551 So.2d at 172. There, the defense did not offer any rationale at all against the race-neutral reasons, but merely alleged that the strikes amounted to a Batson violation. Id.
*315 ¶ 19. In our case, upon reviewing the record, we find that defense counsel properly noted Harris did not comment, nor was she questioned about any subject matter during voir dire. Additionally, defense counsel stated that the mere fact she is Baptist was insufficient grounds for a race-neutral strike. We find this sufficiently constitutes, if not a rebuttal, then a substantial argument in opposition to the strike which the trial court could consider in its final determination.

CONCLUSION
¶ 20. Strickland claims he was prejudiced by the denial of his first peremptory strike, and ultimately he did not receive a fair trial. We fail to see how, in a nearly unanimous five-to-one decision, where five jurors were white and one was black, how Strickland, who is white, was prejudiced. The essential issue is whether Strickland utilized his peremptory challenges in a discriminatory manner. Ultimately, the trial judge found Strickland's rationales pretextual rather than race-neutral, and the strike was properly disallowed. We find the circuit court was in error in reversing the county court's decision, and we therefore reinstate the trial court's judgment for defendant Wilson.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REVERSED AND THE JUDGMENT OF THE COUNTY COURT OF HARRISON COUNTY IS REINSTATED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] The injuries Strickland claimed he sustained during the accident were "permanent spinal injuries." However, Strickland had been involved in another automobile accident in 1996 and went to see Dr. Harry Danielson, the same doctor he saw in the instant case, for back pain. In his deposition testimony, Dr. Danielson explained that in 1996 Strickland's treatment consisted of an evaluation for a possible herniated disc.
[2] Apparently, this information was known because it was requested from the venire on a juror questionnaire.
[3] The trial judge did not remark about the other race-neutral reason proffered-that Harris was employed by DHS.
[4] Likewise, the circuit court, in its order, did not mention the DHS rationale but only referred to one race-neutral reason  that Harris was Baptist.
[5] Strickland's counsel reasoned that he kept the other white Baptist on the panel because he was a blue collar man.
[6] We should note here that a peremptory challenge based solely on religious affiliation is invalid under the Mississippi Constitution and our statutory law. McGilberry v. State, 741 So.2d 894, 923 (¶ 122) (Miss.1999) (citing Thorson v. State, 721 So.2d 590, 594(¶ 8) (Miss.1998)).