5 So.3d 1144 (2008)
Jeffrey JACKSON a/k/a Jeffery Jackson, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-KA-01782-COA.
Court of Appeals of Mississippi.
December 16, 2008.
Rehearing Denied April 7, 2009.
Leslie S. Lee, Justin Taylor Cook, attorneys for appellant.
*1145 Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before LEE, P.J., CHANDLER and GRIFFIS, JJ.
CHANDLER, J., for the Court:
¶ 1. A Hinds County jury convicted Jeffrey Jackson of the armed robbery of Hal & Mal's Restaurant (Hal & Mal's) in Jackson, Mississippi. The Circuit Court for the First Judicial District of Hinds County sentenced Jackson to twenty-five years in the custody of the Mississippi Department of Corrections. Jackson appeals, arguing that the trial court erred by overruling his objection under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Hal & Mal's is a restaurant located in downtown Jackson that is co-owned and operated by brothers Hal White (White) and Malcolm White. At approximately 8:30 a.m. on the morning of March 14, 2005, White and a bookkeeper, Zeta Pigott, arrived at Hal & Mal's to begin their workday. They were the only workers present. Shortly thereafter, a man walked into the restaurant and asked White for an employment application. White described the man as being about five feet, eight inches tall, African American, light-complected, clean-cut, and wearing a gray blazer, a button-up shirt, and gray slacks. White retrieved an employment application from the office and gave it to the man, who folded it and placed it inside his pocket. Then, the man produced a gun that appeared to be a black .38 caliber revolver, pointed it at White, and ordered him to open the safe and to empty all of the cash into a garbage bag. After White complied, the man instructed White and Pigott to lie down on the floor; White told the man that Pigott was too old to lie down on the floor. The man allowed Pigott to remain seated, and then he fled. White called the police.
¶ 4. Janice Banks and Delores Smith worked at the historic preservation division of the Mississippi Department of Archives and History, which is close to Hal & Mal's. They both testified that they were at work on the morning of the robbery when, through the windows, they saw a man matching White's description of the robber standing in the parking lot of their building. The man looked around and then walked in the direction of Hal & Mal's. A few minutes later, they saw the man run back into the parking lot, get into the driver's seat of a black car, and speed away.
¶ 5. On March 29, 2005, both White and Pigott saw a picture of Jackson in the local newspaper and identified him as the armed robber. On the same day, White contacted the detective in charge of the case, Tommy Nelson. Detective Nelson created a photographic lineup that included a picture of Jackson different from the one that had appeared in the newspaper. Both White and Pigott instantly identified Jackson from the lineup as the person who had robbed them. Subsequently, Jackson was arrested. The stolen money was never recovered.
¶ 6. At the trial, both White and Pigott identified Jackson as the armed robber. Jackson tried to create reasonable doubt about his identification as the armed robber with the testimony of David Thompson. Thompson was the head chef at Martin's Restaurant, which is across the street from Hal & Mal's. Thompson testified that one morning, two African American men with darker complexions than Jackson's had "cased" Martin's Restaurant, and they had asked him for an employment application. *1146 However, Thompson was unable to relate the date that this had occurred; thus, his testimony was not strong evidence that it was one of those two men who had armed robbed Hal & Mal's. The jury found Jackson guilty of armed robbery.

LAW AND ANALYSIS

WHETHER THE TRIAL COURT ERRED IN DENYING JACKSON'S BATSON OBJECTION REGARDING THE STATE'S USE OF PEREMPTORY CHALLENGES AGAINST AFRICAN AMERICAN VENIREPERSONS WITHOUT ADEQUATE RACE-NEUTRAL JUSTIFICATION.
¶ 7. Batson protects a defendant's right to be tried by a jury selected on the basis of nondiscriminatory criteria. Ryals v. State, 794 So.2d 161, 165(¶10) (Miss.2001). A defendant asserting a Batson claim must make a prima facie showing that race was the reason for the peremptory challenge by showing that:
(1) the defendant is a member of a cognizable racial group; (2) the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; and (3) these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the venireman from a petit jury on account of their race.
Chisolm v. State, 529 So.2d 635, 638 (Miss. 1988) (citing Batson, 476 U.S. at 96, 106 S.Ct. 1712). If the defendant makes a prima facie case, then the burden shifts to the challenging party, who may rebut the prima facie case by offering a race-neutral explanation for the challenge. Gibson v. State, 731 So.2d 1087, 1095(¶24) (Miss. 1998). Once a race-neutral reason has been offered, the defendant has an opportunity to rebut the reason. Id. Then, the trial court must determine whether the defendant has met his burden of proof of purposeful discriminatory intent in the exercise of the peremptory challenge. Strickland v. State, 980 So.2d 908, 915(¶10) (Miss.2008) (citing Carter v. State, 799 So.2d 40, 46(¶22) (Miss.2001)). The State's purposeful discrimination in the exercise of a single peremptory challenge violates Batson despite the State's acceptance of other African American persons as jurors. Chisolm, 529 So.2d at 637.
¶ 8. The trial court's determinations under Batson are "largely based on credibility" and for that reason, they are given great deference by this Court. Jackson v. State, 962 So.2d 649, 674(¶84) (Miss.Ct. App.2007) (citing Gibson, 731 So.2d at 1095(¶23)). In the Batson context, affording the trial court's determinations great deference means that we will reverse "only where the finding of the lower court was clearly erroneous or against the overwhelming weight of the evidence." Baldwin v. State, 784 So.2d 148, 155(¶21) (Miss.2001) (quoting Kolberg v. State, 704 So.2d 1307, 1312(¶24) (Miss.1997)). "Findings of fact concerning whether the stated reasons are race[-]neutral are given great deference and will not be overturned unless clearly erroneous or against the overwhelming weight of the evidence." Harris v. State, 901 So.2d 1277, 1281-82(¶14) (Miss.Ct.App.2004) (citing Tanner v. State, 764 So.2d 385, 393(¶14) (Miss. 2000)).
¶ 9. Jackson claims that he was denied equal protection because the State exercised peremptory challenges against four potential jurors on the basis of race. The State counters that it provided race-neutral reasons for its challenges. We turn to the record made before the trial court. The first panel of twenty-three potential jurors consisted of eight white venirepersons and fifteen African American venirepersons. *1147 The State used the first eight of its peremptory challenges to exclude African American venirepersons, tendering five African American and seven white potential jurors to Jackson. At that point, Jackson made a Batson objection based on the State's use of its strikes against only African American jurors. The trial court found that Jackson had established a "borderline, marginal" prima facie case of discriminatory intent and required the State to provide race-neutral reasons for the strikes. After discussing the State's reason for each strike and Jackson's rebuttal, the trial court found that Jackson had not shown purposeful discrimination. The jury ultimately selected to try Jackson consisted of seven African American and five white jurors.
¶10. The State correctly recognizes that the issue of whether Jackson actually made a prima facie showing is of no consequence because the trial court required the State to provide race-neutral reasons for its challenges. Burnett v. Fulton, 854 So.2d 1010, 1014(¶9) (Miss.2003). "[T]he United States Supreme Court has held, and it has long been the law of this State, that whether or not a prima facie showing is made is rendered moot once the proponent of the strike offers a race-neutral reason for the peremptory challenge, and the trial court rules on the ultimate question of purposeful discrimination." Wilson v. Strickland, 953 So.2d 306, 312(¶11) (Miss.Ct.App.2007) (citing Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). Therefore, we proceed to review the trial court's rulings that there was no purposeful discrimination inherent in the State's strikes.
¶ 11. Although at trial Jackson challenged the State's peremptory strikes of eight African American venirepersons, his appeal is limited to the State's striking of four of those venirepersons: Claudia Moncure, Melinda Dixon, Florese Wilson, and Denise Brown.[1] Jackson argues that he proved that the State's articulated race-neutral reasons for each strike were, in actuality, a pretext for a discriminatory motive.

1. Moncure
¶ 12. According to the prosecutor, he struck Moncure because she had only a twelfth-grade education. The prosecutor expressed the State's goal of selecting the best-educated jury possible. The circuit court found the State's explanation to be a race neutral reason.
¶ 13. A prospective juror's educational background has been deemed a race-neutral reason for exercising a peremptory challenge. Davis v. State, 660 So.2d 1228, 1242 (Miss.1995). Citing Flowers v. State, 947 So.2d 910, 937(¶68) (Miss.2007), Jackson argues that the trial court erred by finding that the State struck Moncure for the race-neutral reason of her twelfth-grade education. He contends that the State's exercise of its first eight strikes against African American venirepersons indicates that the reason was a pretext for discrimination on the basis of race.
¶ 14. Flowers instructed trial courts to consider the plausibility of a proffered race-neutral reason in light of the way the State has exercised its other strikes. Id. (citing Miller-El v. Dretke, 545 U.S. 231, 251-52, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)). In this case, the trial court found the State's challenge to Moncure based upon her educational background to be a race-neutral reason in the context of the *1148 State's other strikes, which indicated to the court that the State "would like as much education as possible" on the jury. Given the great deference that we afford the trial court's Batson determinations, we do not disturb the trial court's finding that there was no purposeful discrimination.

2. Dixon
¶ 15. The prosecutor struck Dixon because she had voted not guilty in a criminal trial and she possessed a twelfth-grade education. The trial court found that Dixon's prior vote of not guilty in a criminal trial was a race-neutral reason for the strike. As we have stated, a juror's educational background can be seen as a race-neutral reason for exercising a peremptory challenge, and this reason for the strike was consistent with the State's striking of Moncure. Davis, 660 So.2d at 1242. The fact that a venireperson has voted not guilty in a prior criminal trial has also been recognized as a race-neutral reason for a peremptory challenge. Jackson, 962 So.2d at 675(¶90).
¶ 16. Jackson contends that the record evinced that the State's striking of Dixon for this reason constituted disparate treatment. Under Batson, "disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge" is an indicator of pretext. Manning v. State, 765 So.2d 516, 519(¶9) (Miss.2000). Jackson asserts that the State accepted a white female venireperson who had previously served on a criminal jury, but whose voir dire response was ambiguous as to whether or not she had voted to acquit. The following exchange with that venireperson occurred during voir dire:
BY THE STATE: And in Hinds County, how far back was that, ma'am?
A: At least two years ago.
BY THE STATE: Okay. And was the jury reachingdid the
A: No.
Jackson argues that this Court should presume that the white venireperson's response of "no" to the prosecutor's question indicated she voted not guilty in a criminal case; he argues there was disparate treatment because the State struck the African American Dixon for voting not guilty. However, it is far from clear that the venireperson's response of "no" signified a prior not-guilty vote. In fact, considering the language of the prosecutor's question and of his prior questions, it appears probable that the State was asking the venireperson whether the jury had reached a verdict, to which the venireperson responded, "no." Jackson's argument in no way undermines the trial court's finding of no purposeful discrimination, and we do not disturb that finding.

3. Wilson
¶ 17. As to the reason for striking Wilson, the prosecutor expressed his belief that Wilson's occupation as a parochial school teacher might cause her to be more lenient to the defendant. The trial court found this explanation to be race neutral. A prospective juror's employment as a teacher has been found to be a race-neutral reason for striking that juror. Johnson v. State, 529 So.2d 577, 585 (Miss. 1988). Jackson argues that the trial court erred by finding that this was a race-neutral reason because the court did not require the State to explain how a parochial school teacher would be more sympathetic to the defendant. However, the second step of the Batson process, requiring the proponent of the strike to offer a race-neutral reason, "does not demand an explanation that is persuasive, or even plausible." Taylor v. State, 733 So.2d 251, 259(¶34) (Miss.1999) (quoting Purkett v. *1149 Elem, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). Rather, "the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the [] explanation, the reason offered will be deemed race neutral." Id. The State proffered a facially race-neutral reason. Johnson, 529 So.2d at 585. We find nothing in the record indicating that the trial court's finding of no purposeful discrimination was clearly erroneous.

4. Brown
¶ 18. The prosecutor stated that he struck Brown because she was inattentive and because she had dyed-red hair. Concerning these reasons, the court stated:
The court would not have accepted [inattentiveness] until there was a reference to the way she dyed her hair red, and I guess gave some idea to the State that she was out of sync with society or something. And of course, a lot of women do it, but I'm not saying it was a right or wrong conclusion, but the State evidently felt that way, that she was a little different.
Thus, the trial court accepted both reasons together as a race-neutral explanation for striking Brown.
¶ 19. "Inattentiveness alone has been accepted as a race-neutral explanation for the exercise of a peremptory strike." Hicks v. State, 973 So.2d 211, 220(¶28) (Miss.2007) (citing Horne v. State, 825 So.2d 627, 636(¶24) (Miss.2002)). In this case, the trial court did not accept Brown's inattentiveness alone as a race-neutral reason for the strike, but accepted it along with the State's citation of the fact that Brown's hair was dyed red. As already stated, the State's explanation for exercising a peremptory challenge need not be "persuasive, or even plausible," and may even be "silly, or superstitious." Gibson, 731 So.2d at 1096(¶27) (quoting Purkett, 514 U.S. at 767-68, 115 S.Ct. 1769). To be race neutral, the explanation merely must be facially valid, meaning that no discriminatory intent is inherent in the explanation. Purkett, 514 U.S. at 768, 115 S.Ct. 1769. Thus, a race-neutral reason for a strike can be some aspect of a prospective juror's appearance not particular to any race, such as wearing a beard or having long, unkempt hair. Id. at 769, 115 S.Ct. 1769. The fact that a juror slouched, wore gold chains, rings, and a watch has been recognized as a race-neutral reason. Lockett v. State, 517 So.2d 1346, 1356 (Miss.1987). Applying these criteria, we find that the trial court correctly found the State's explanation for striking Brown to be race neutral.
¶20. Jackson argues that the race-neutral explanation was pretextual. In support of this argument, he contends that Brown was an engineer and, thus, her education level was consistent with the State's articulated goal of selecting a highly educated jury. However, the trial court rejected this argument, finding that the State struck Brown for its stated reasons that Brown was inattentive and she had dyed-red hair. This Court has explained that:
In the context of a direct review, the trial court's decision is given great deference since the issue is a factual finding involving credibility-that is-whether the trial judge is to believe the counsel's race-neutral explanation for the peremptory challenge. For this determination, findings of fact are best suited to the trial court. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. The reviewing court analyzes only the transcripts of voir dire and is *1150 not as reliable at determining credibility as the trial judge. The Mississippi Supreme Court has adopted this rationale as well, finding the credibility of the challenging attorney is often decisive. Thus, the trial judge's decision will only be reversed when the decision is clearly erroneous or against the overwhelming weight of the evidence.
Wilson, 953 So.2d at 311 (¶9) (internal quotations and citations omitted). The trial court was able to observe Brown and also to evaluate the demeanor and credibility of the prosecutor. Considering the totality of the evidence before the trial court that is apparent from the record of the voir dire, and the great deference we must afford to the trial court, we cannot say that the trial court's decision to accept the State's race-neutral explanation for the strike was clearly erroneous or against the overwhelming weight of the evidence. Therefore, we affirm Jackson's conviction and sentence.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING AND CARLTON, JJ.
KING, C.J., Specially Concurring:
¶ 22. It is with some reservation that I concur with the majority decision in this case. My reservation relates to the Batson issue. The record before this Court suggests that of the first twenty-one prospective jurors, thirteen were Black and only eight were white. In tendering a panel of twelve prospective jurors to the defense, the prosecution exercised peremptory challenges against eight of the thirteen Blacks and submitted to the defense a panel of five black and seven white jurors.
¶ 23. The prosecution offered what were facially neutral reasons for the exercise of these eight challenges to the black prospective jurors. However, while these reasons were facially neutral, they were also the types of reasons which can serve as a pretext to mask a discriminatory intent. Among the reasons for striking four of the black prospective were that they had either a 12th grade education or a GED and the prosecution wanted a well-educated jury. While desiring a well-educated jury, the prosecution struck (1) a well-educated engineer employed by the Mississippi Department of Transportation because she had dyed her hair red and (2) a well-educated school teacher because she might be sympathetic to a young defendant. While facially neutral, the reasons for these two challenges would seem to directly contradict the prosecution's stated goal of selecting a well-educated jury.
¶ 24. The prosecution struck one prospective juror, Christmas, because his last name was the same as a number of other persons in Hinds County who had been arrested. The record does not reflect any direct effort by the prosecution to ascertain whether there was any relationship to those persons with the same surname. It should be noted that the prosecution did ask, ".... have you or your immediate family members ever been booked into a jail, including the Hinds County jail?" While several prospective jurors responded in the affirmative, prospective juror Christmas did not respond. There is nothing *1151 in the record, which suggests that he was being deceptive.
¶ 25. These reasons offered by the prosecution for these challenges seem to be rather dubious. However, a full review of this matter is hampered by the limited information contained in the record. At the least, the roster of prospective jurors and any questionnaires completed by prospective jurors, might have been helpful to a review of this matter.
¶ 26. After consideration of the applicable standard of review, and given the limited information available to address this issue, I concur in the result reached by the majority.
IRVING AND CARLTON, JJ., JOIN THIS OPINION.
NOTES
[1] Jackson made no argument that the State exercised any of its strikes on the basis of gender as prohibited by J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 146, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).