# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00832-COA

**SAMUEL TERRAIL YOUNG JR.**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                         **APPELLEE**

DATE OF JUDGMENT:            12/06/2016
TRIAL JUDGE:                 HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:   MADISON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                             BY: MOLLIE MARIE MCMILLIN
                             SAMUEL TERRAIL YOUNG JR. (PRO SE)
ATTORNEY FOR APPELLEE:       BILLY L. GORE
DISTRICT ATTORNEY:           MICHAEL GUEST
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 09/04/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.

### LEE, C.J., FOR THE COURT:

¶1.    Samuel Terrail Young Jr. was indicted by a Madison County grand jury of one count of sexual battery and one count of burglary.  Following a jury trial in the Madison County Circuit Court, the jury found Young guilty of the sexual-battery charge and not guilty of the burglary charge.  He was sentenced as a violent habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2015) to life imprisonment without eligibility for parole in the custody of the Mississippi Department of Corrections.  Through his appointed appellate counsel, Young appeals his conviction, arguing (1) he received ineffective assistance of counsel, and (2) the trial court erred in denying his motion for mistrial.  Young

also filed a pro se brief asserting numerous additional issues that we also address. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    On June 28, 2015, Michelle Brickner was doing laundry at her apartment in Ridgeland, Mississippi, when she was attacked and raped. She testified that she had been in the living room and laundry room. She then walked into her bathroom and saw a man standing in her bedroom. Brickner stated she noticed the window and blinds were pulled up, which she had not done. When she saw the man, she screamed and tried to run, but he tackled her to the ground. Brickner stated the man covered her mouth and told her not to scream or he would kill her.

¶3.    Brickner testified that the man proceeded to question her regarding her age, ethnicity, marital status, and how long she had lived in the apartment. She stated that at no point did she get a good look at his face because he would not allow her to and continued to threaten to kill her if she looked at him. The man took off his pants and told Brickner to perform oral sex on him. A few minutes later, he told her to remove her clothes, and he raped her. Brickner stated that the rape began in the bedroom, and at some point, the man moved her into the living room. He penetrated her vaginally and then attempted to penetrate her anally. Brickner stated that she screamed, and the man again threatened to kill her. He penetrated her again vaginally until he eventually ejaculated. Following the rape, the man forced Brickner to bathe several times. She testified that he used her facial cleanser and used his hands and fingers to try and clean inside of her vagina. He also refilled and emptied the tub

several times.  Before he left her apartment, the man told Brickner if she called the police he would kill her.

¶4.    Brickner stated she got out of the tub about ten minutes after the man left and called her boyfriend, who convinced her to call the police.  When the police arrived, she described what had happened in the apartment.  She stated the only description she was able to give the police was that the attacker was a taller black male.  After talking with the police, Brickner went to Baptist Hospital in Jackson, Mississippi, where she had a sexual-assault kit performed by Dr. Ronnie Ali.  Dr. Ali, an expert in emergency medicine, testified at trial that he observed bruising on Brickner's arm, legs, and buttocks, which was included in his report. The report also noted blood on Brickner's underwear.  Dr. Ali also reported swelling of the rectum, indicating penetration, as well as swelling and bruising of the vagina.  During the exam, Dr. Ali noted a significant amount of semen inside the vagina.  Dr. Ali opined that the combination of the swelling of the vagina and amount of semen indicated that the sexual encounter was "fresh" or "acute."

¶5.    Investigator Leslie Owens with the Ridgeland Police Department was called to Brickner's apartment.  She developed Young as a suspect after DNA testing from the semen recovered from Brickner's sexual-assault exam matched Young's DNA profile stored in a database of convicted felons.  Investigator Owens also determined that Young lived in an apartment complex near Brickner's apartment and testified it would take approximately one minute on foot to travel between the two apartments.

¶6.    Joseph Heflin, a DNA analyst with the Mississippi Forensics Laboratory, testified that

3

he was able to develop a DNA profile from the vaginal swabs taken from Brickner's sexual-assault kit. The profile was run against DNA in a database and returned a match to Young's DNA. Heflin testified that the likelihood the DNA would match another unrelated person's DNA profile was greater than one in ten billion.

¶7. Pierre Pryor Jr., a friend of Young's, testified that he was with Young on June 26, 2015, at Young's apartment. He stated the two were just talking. According to Pryor, Young asked where all the women were, and Pryor told Young to check "backpage.com." Pryor stated that Young used a computer to go to the website and then asked Pryor to leave for a little while because a girl from the website was coming by. Pryor waited outside in his car, and he testified that he saw a Chinese woman in her late twenties knock on Young's door. (Brickner was of Asian descent.) He stated the woman stayed in the apartment around thirty minutes before she left, seemingly upset because she slammed the door. Pryor stated he could not remember where Young's apartment was, whether or not it was on the first floor or upstairs, and was playing games on his phone when he saw the woman. Brickner denied ever using "backpage.com" and stated she had never heard of it prior to the investigation. She also denied using any other dating or meeting app to meet Young, and that she had never met him before, and that the sexual encounter was not consensual.

¶8. Young's cousin, Jasmine Haden, testified that Young was with her in Memphis, Tennessee, where she was living on the weekend Brickner was raped. Haden testified that Young was at her house in Memphis around 9:00 p.m. on June 28, 2015, and they had a cookout with several others that Sunday evening. Young introduced evidence of two

4

Facebook posts Haden made. The first was posted on June 27, 2015, stating, "yay, my cousin here. Me so happy[,]" and Haden had tagged Young in the post. The second was posted on June 29, 2015, stating, "I miss you already, cuz." There were no posts made on June 28, 2015, the date of the sexual assault.

¶9. Richard Meeks testified that he saw Young in Memphis, and the two had drinks at a club on Beale Street the evening of Saturday, June 27, 2015. Meeks testified that afterwards, they went back to his house and played dominoes. He also testified that the next day, Sunday, June 28, 2015, they were at a fish fry at Haden's house. Meeks testified that Young was still at Haden's home in Memphis when he left around 8:30 or 9:00 p.m.

¶10. The jury found Young guilty of sexual battery. He now appeals his conviction, arguing (1) he received ineffective assistance of counsel, and (2) the trial court erred by denying his motion for mistrial.

## DISCUSSION

### I.    Ineffective-Assistance Claim

¶11. In his first issue on appeal, Young argues that he received ineffective assistance of counsel because his counsel did not file a motion to introduce evidence of Brickner's sexual history. Young's appellate counsel acknowledges that under Mississippi Rule of Evidence 412, evidence of sexual behavior or reputation of a sexual-assault victim is generally not admissible. Young argues, however, that he meets an exception under Rule 412(b)(1)(A)-(B) to prove that someone other than the defendant was the source of semen or that the encounter was consensual. Young argues he was unable to present evidence supporting his theory of

5

defense because his counsel failed to follow the procedures required under Rule 412 by not filing a written motion describing the evidence at least fifteen days before trial. M.R.E. 412(c)(1)(A)-(B).

¶12. A claim for ineffective assistance of counsel should only be addressed on direct appeal where "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Reed v. State*, 204 So. 3d 785, 789 (¶16) (Miss. Ct. App. 2016) (quoting *Johnson v. State*, 196 So. 3d 973, 975 (¶7) (Miss. Ct. App. 2015)). Young asks this Court on direct appeal to consider the merits of his ineffective-assistance claim, and the State stipulates that the record is adequate for this Court to make such a finding. As such, we will consider the merits of his claim.

¶13. In an ineffective-assistance-of-counsel claim,

> a defendant must show that: (1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense. The burden of proof rests with the defendant to prove both prongs. Under *Strickland*,[1] there is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. To overcome this presumption, the defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.

*Renfrow v. State*, 202 So. 3d 633, 636 (¶7) (Miss. Ct. App. 2016) (quoting *Maggitt v. State*, 26 So. 3d 363, 365 (¶12) (Miss. Ct. App. 2009)). There is also a presumption that decisions made by defense counsel are strategic, and this Court "will not second-guess counsel's

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

decisions that fairly may be characterized as strategic." *Shinn v. State*, 174 So. 3d 961, 966 (¶12) (Miss. Ct. App. 2015). Finally, we look "at the totality of circumstances to determine whether counsel's efforts were both deficient and prejudicial." *Howell v. State*, 163 So. 3d 240, 259 (¶49) (Miss. 2014) (quoting *Williams v. State*, 73 So. 3d 1125, 1129 (¶12) (Miss. 2011)).

¶14.    The record demonstrates that Young's counsel failed to comply with the procedures under Rule 412 because she was unaware of the requirements. The State filed a motion in limine on September 7, 2016, to exclude any evidence of Brickner's past sexual behavior. At a motions hearing on November 21, 2016, the trial court addressed the State's motion to exclude and asked Young's counsel if she intended to introduce evidence of Brickner's past sexual behavior. Young's counsel indicated that she intended to do so, but when questioned by the trial court about whether she had filed the proper motions, she stated she had not and that she was unaware of the fifteen-day notice requirement. The trial court indicated that the evidence would likely be inadmissible under the rule but gave Young's counsel the opportunity to provide something showing why an exception should apply. The next day, on November 22, 2016, Young's counsel filed a motion to offer evidence of the victim's past sexual behavior. The motion was denied during a pretrial hearing the morning of trial prior to voir dire.

¶15.    Because the record clearly demonstrates Young's counsel's failure to timely file the notice and motion to introduce evidence of Brickner's past sexual behavior was due to oversight and unawareness by her own admission, we cannot presume the decision was

strategic. However, our inquiry does not end there. Again, to demonstrate a claim of ineffective assistance of counsel, Young must show that his counsel's performance was deficient, and that this deficiency prejudiced his defense—that is, a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. *Renfrow*, 202 So. 3d at 636 (¶7).

¶16. We find that Young has failed to prove that but-for his counsel's failure to timely file the fifteen-day notice and motion, the result would have been different. We note that the admission or exclusion of evidence is within the sound discretion of the trial court. *Bell v. Stevenson*, 158 So. 3d 1229, 1237 (¶24) (Miss. Ct. App. 2015). Given that the admission of evidence is a matter of discretion, there is no indication in the record that had the motion been timely filed, it would have been granted. Further, the trial court allowed Young's counsel to make a showing as to why the evidence should be admitted notwithstanding her failure to comply with the Rule's notice requirement. Rule 412 states that once the motion is timely made and notice procedures are complied with, a hearing must be held to determine the admissibility of the evidence, as well as to determine whether the probative value of relevant evidence outweighs the danger of unfair prejudice. M.R.E. 412(c)(2). The record does not indicate that even if Young's counsel timely filed the motion that the trial court would have found the offer of proof sufficient for a hearing; conducted a hearing; determined the evidence to be admissible; determined the evidence to be more probative than prejudicial; or admitted the evidence. As such, Young has failed to demonstrate "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the

8

proceeding would have been different." *Renfrow*, 202 So. 3d at 636 (¶7). This issue is without merit.

## II.    Motion for Mistrial

¶17.    Young also argues that the trial court erred by failing to grant his motion for mistrial after certain remarks were made by the prosecutor during closing arguments. Young refers to the following statement made by the State at the beginning of its closing statement: "In June of 2002, I went on my senior trip to Mexico and I was kidnapped and held at gunpoint by three men —." The prosecutor's statement was cut off by Young's counsel's objection. Young argues that these comments by the prosecutor improperly bolstered Brickner's testimony by "essentially [telling] the jury that because the same thing had happened to the prosecutor, they could believe Brickner's testimony and overlook the fact that she was not able to give a physical description of the man who raped her."

¶18.    Young's counsel immediately objected to the statement and moved for mistrial. The trial court held an on-the-record bench conference where the prosecutor explained that she was going to finish her statement by saying that when she went to the police station, she could not give any facial identity of the men, and that "just because you're a victim of a crime does not mean that you can give a perfect identification of your attacker." The trial court overruled the motion for mistrial but instructed the jury that certain things were not in evidence and should not be relied on as in evidence. The trial court then admonished the prosecutor to get to her point about identification. The prosecutor continued, "What I'm trying to say is, sometimes it's hard to identify people when you're in a stressful situation.

It was hard for me and sometimes it can be hard for people when they're asked to give a perfect identification of a person who is attacking them."

¶19. "The decision to grant or not grant a mistrial lies within the sound discretion of the trial court and is reviewed for abuse of discretion." *Straight v. State*, 205 So. 3d 1089, 1092 (¶10) (Miss. Ct. App. 2016). "If error 'substantially and irreparably' prejudices the defendant's case, then the trial court must grant a mistrial." *Id*. "Any allegedly improper prosecutorial comments must be considered in context, considering the circumstances of the case, when deciding on their propriety." *Batiste v. State*, 121 So. 3d 808, 834 (¶39) (Miss. 2013). "Even if the comment was improper, it would not constitute grounds for reversal unless the natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice." *Id*. (internal quotation mark omitted). The Mississippi Supreme Court "has held that a trial judge is best suited to determine the prejudicial effect of an objectionable remark and is given considerable discretion in deciding whether the remark is so prejudicial as to merit a mistrial." *Ford v. State*, 206 So. 3d 486, 491 (¶14) (Miss. 2016). "Unless 'serious and irreparable damage' results from an improper comment, the judge should 'admonish the jury then and there to disregard the improper comment.'" *Id*.

¶20. We do not find that the trial court abused its discretion in denying Young's motion for mistrial based on the prosecutor's remarks. The prosecutor's remarks did not substantially and irreparably prejudice Young's case. The remarks were immediately objected to and the trial judge immediately heard argument on the objection at a bench conference. Then, the

trial judge immediately instructed the jury that it should not rely on things not in evidence, and advised the prosecutor that she should get to the point about identification and nothing else, which she did. This issue is without merit.

### III. Young's Supplemental Brief

¶21. In addition to the issues presented on appeal by Young's appellate counsel, Young filed a supplemental brief arguing several additional issues which we address in turn.

#### A. Batson Challenge

¶22. Young asserts that the trial court erred when it allowed the prosecutor to exclude jurors who did not have a college degree. Young asserts the strikes violated *Batson*,[2] "directly limit[ing] the number of African American jurors able to serve on his jury" for the "sole purpose of discriminating against jurors on the basis race."

¶23. "The trial judge acts as finder of fact when a *Batson* issue arises." *Allen v. State*, 235 So. 3d 168, 171 (¶7) (Miss. Ct. App. 2017). "We will not overrule a trial court on a *Batson* ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence." *Id.*

¶24. The use of "peremptory strikes is 'subject to the commands of the Equal Protection Clause'. . . , [which] prohibits using peremptory strikes to engage in racial discrimination." *H.A.S. Elec. Contractors Inc. v. Hemphill Const. Co.*, 232 So. 3d 117, 122-23 (¶13) (Miss. 2016) (quoting *Batson v. Kentucky*, 476 U.S. 79, 89 (1986)). "To safeguard against racial discrimination in jury selection, the United States Supreme Court in *Batson* established a

---

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

11

three-step process." *Id*. at 123 (¶14).

> First, the party objecting to the use of a peremptory strike has the burden to make a prima facie case that race was the criterion for the strike. Second, if the objecting party makes such a showing, the burden shifts to the striking party to state a race-neutral reason for the strike. Third, after the striking party offers its race-neutral explanation, the court must determine if the objecting party met its burden to prove purposeful discrimination in the exercise of the peremptory strike—that the stated reason for the strike was merely a pretext for discrimination.

*Id*.

¶25. The record demonstrates that Young's trial counsel moved for a *Batson* challenge and alleged that the prosecutor used her strikes to exclude a disproportionate number of black jurors. During the *Batson* hearing, Young's counsel argued that the prosecutor struck six black jurors and only struck two white jurors. The trial court found that Young's counsel made a prima facie showing that the strikes were utilized by the State in a racially discriminative manner. Accordingly, the trial court required the State to state a race-neutral reason for the strikes. The State explained that it struck any jurors that did not possess greater than a high school education arguing that because the case involved significant DNA evidence, that a higher level of education would be beneficial to any juror. The trial court found that the education-level explanation was a valid, race-neutral reason. Young's counsel stated the reason was merely pretext for race but did not offer any further rebuttal. The trial court noted on the record that it had "looked at each of the [twelve] jurors that were tendered and each of [twelve], the whites and blacks, had at least a college degree." The trial court also noted that the education-level reason resulted in the striking of three whites and four blacks. The trial court found that the strikes were not a pretext for racial discrimination and

allowed the strikes to stand.

¶26.    In this case, the trial court properly followed the process set forth in *Batson* to determine whether the strikes were used with purposeful discriminatory intent.  This Court has previously affirmed a trial court's decision that education level is a valid, race-neutral reason for a juror strike where the State indicated its desire for "as much education as possible."  *See Jackson v. State*, 5 So. 3d 1144, 1148 (¶14) (Miss. Ct. App. 2008).  "Given the great deference that we afford the trial court's *Batson* determinations, we do not disturb the trial court's finding that there was no purposeful discrimination."  *Id.*

### B.    Sufficiency of the Evidence

¶27.    Young also states that the trial court erred when it allowed his guilty verdict on the sexual-battery charge to stand, arguing it was inconsistent with the jury's verdict of acquittal on the burglary charge.  This issue was raised in a post-trial motion for a judgment notwithstanding the verdict (JNOV) as well as motion for a new trial.  It now seems in Young's supplemental brief that he attempts to raise a sufficiency-of-the-evidence argument as to the sexual-battery conviction.

¶28.    This Court's standard of review for a trial court's grant or denial of a motion for JNOV is de novo.  *Estate of Gardner v. Gardner*, 228 So. 3d 921 (¶19) (Miss. Ct. App. 2017).  "A motion for JNOV challenges the legal sufficiency of the evidence, and where there is substantial evidence to support the verdict, we will affirm the denial of a JNOV."  *InTown Lessee Assoc. LLC v. Howard*, 67 So. 3d 711, 718 (¶22) (Miss. 2011).  "Substantial evidence is information of such quality and weight that reasonable and fair-minded jurors in

13

the exercise of impartial judgment might have reached different conclusions." *Bryant v. State*, 151 So. 3d 1025, 1029 (¶13) (Miss. Ct. App. 2014) (quoting *Daniels v. State*, 107 So. 3d 961, 963 (¶10) (Miss. 2013)). "When reviewing a motion for a JNOV, the trial judge is required to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant." *Id*. at (¶14) (internal quotation mark omitted). "We will reverse only where with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty." *Id*. (internal quotation marks omitted).

¶29.    "When a defendant charged in a multi-count indictment is convicted on some counts while acquitted of others, the appellate inquiry is limited to a determination of whether the evidence is legally sufficient to support the counts on which a conviction is returned. What the jury did with the remaining counts is immaterial." *Grant v. State*, 198 So. 3d 400, 406 (¶21) (Miss. Ct. App. 2016) (internal quotation mark omitted).

¶30.    Here, the jury found Young guilty of sexual battery in violation of Mississippi Code Annotated section 97-3-95(1)(a) (Rev. 2014), which states "(1) A person is guilty of sexual battery if he or she engages in sexual penetration with: (a) Another person without his or her consent[.]"

¶31.    With regard to the legal sufficiency of the evidence, Brickner testified that she did not consent to sexual contact with Young; the sexual-assault exam performed within hours after the encounter revealed bruising to Brickner's arms, legs, and buttocks, and bruising and

14

swelling to her vagina and rectum, indicating penetration. The sexual-assault exam also revealed a large amount of semen, with the DNA analysis implicating Young, with a chance of one in ten billion that the DNA would match another unrelated person. As such, there is substantial evidence to support the verdict of guilty on the sexual-battery count. We affirm the trial court's decision to deny Young's post-trial motion for a JNOV. This issue is without merit.

### C. Illegal Sentence

¶32. Young argues that his sentence of life imprisonment is cruel and unusual punishment because it exceeds a "life sentence" based on a calculation of his life expectancy, and is therefore, an illegal sentence. He also argues that the State did not give proper notice of its intent to charge Young as a habitual offender, and thus his habitual-offender status is improper.

¶33. "Under Uniform Rule of Circuit and County Court Practice 7.09, an indictment may be amended to charge the defendant as a habitual offender if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." *Lofton v. State*, No. 2016-KA-00990-SCT, 2018 WL 1957312, at *10 (¶54) (Miss. Apr. 26, 2018). The record reflects that the State filed a motion to amend the indictment to charge Young as a habitual offender on June 17, 2016. The motion was argued on November 21, 2016, and the State specifically detailed two of Young's prior felony convictions that resulted in a sentence of one year or more. Finally, the hearing to determine Young's habitual-offender status was held on December 5, 2016—after his conviction. It cannot be said that Young was not given

15

a fair opportunity to prepare and present a defense, or that he was unfairly surprised in regard to his habitual-offender status. This issue is without merit.

¶34. In regard to his cruel-and-unusual-punishment argument, Young was sentenced to life imprisonment as a violent habitual offender under section 99-19-83. During a pre-sentencing hearing, the State proved Young's habitual offender status. "[T]he Mississippi Supreme Court [has] stated, this is not the first time that Mississippi's habitual offender statute has been challenged as cruel and unusual punishment. [The supreme court] has consistently held that sentences under Mississippi Code Annotated section 99-19-83 do not constitute cruel and unusual punishment." *Bonner v. State*, 962 So. 2d 606, 611 (¶19) (Miss. Ct. App. 2006) (quoting *Huntley v. State*, 524 So. 2d 572 (Miss. 1988)). This issue is without merit.

### D. Prayer in Courtroom

¶35. Young argues that he is entitled to a mistrial based on the fact the trial judge opened courtroom with a prayer prior to jury venire. This was done prior to trial and Young's counsel moved to quash the jury panel based on the prayer. The trial judge denied Young's motion to quash. Young now appeals.

¶36. "A jury panel should not be quashed unless the defendant can show that the failure to comply with the statute amounts to actual fraud, prejudice, or such a flagrant violation of duty as to amount to fraud." *Cooper v. State*, 200 So. 3d 1065, 1072 (¶25) (Miss. Ct. App. 2016). Here, Young does not show how the prayer violated the jury-selection statute (Mississippi Code Annotated section 13-5-87 (Rev. 2012)) or resulted in fraud or prejudice. This issue is without merit.

¶37.   **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**